KEKER, VAN NEST & PETERS LLP
SHARIF E. JACOB - # 257546
sjacob@keker.com
KATIE LYNN JOYCE - # 308263
kjoyce@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant NVIDIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 5:26-CV-02647-EKL<br><br>**DEFENDANT NVIDIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        September 2, 2026<br>Time:       10:00 a.m.<br>Dept.:       Courtroom 7 – 4th Floor<br>Judge:      Hon. Eumi K. Lee<br><br>Date Filed: March 26, 2026<br><br>Trial Date:  Not Set |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................................1

II.     BACKGROUND ...................................................................................................................3

III.    LEGAL STANDARD AND RELEVANT STATUTES.....................................................4

IV.     ARGUMENT ........................................................................................................................5

        A.      Beaulier Fails to Plead the Removal or Alteration of CMI as Required
                under § 1202(b)(1) ...................................................................................................5

        B.      Beaulier Fails to Plead That the Alleged Removal or Alteration of CMI
                Was Done Intentionally as Required under § 1202(b)(1).......................................7

        C.      Beaulier Fails to Plead That NVIDIA Had the Additional Requisite Mental
                State as Required under Both § 1202(b)(1) and § 1202(b)(3) ................................9

        D.      Beaulier Fails to Plead Identicality as Required under § 1202(b)(1) and
                § 1202(b)(3) ..........................................................................................................10

        E.      Beaulier Fails to Plead Distribution of His Works as Required under
                § 1202(b)(3) ..........................................................................................................12

        F.      Beaulier Fails to Plead Knowledge of CMI Removal as Required under
                § 1202(b)(3) ..........................................................................................................13

V.      CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
   No. CV1202215RGKVBKX, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) .........................6

*Andersen v. Stability AI Ltd.*,
   700 F. Supp. 3d 853 (N.D. Cal. 2023) ....................................................................................6

*Andersen v. Stability AI Ltd.*,
   744 F. Supp. 3d 956 (N.D. Cal. 2024) ..................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................4, 6

*Beaulier v. Meta Platforms*,
   No. 3:26-cv-02632-CRB (N.D. Cal.)......................................................................................1

*Beaulier v. Microsoft Corp.*,
   No. 2:26-cv-01031-JNW (W.D. Wash.) ..................................................................................1

*Beaulier v. Roblox Corp.*,
   No. 3:26-cv-02642-JSC (N.D. Cal.) .......................................................................................1

*In re Century Aluminum Company Securities Litigation*,
   729 F. 3d 1104 (9th Circ. 2013)............................................................................................7

*Concord Music Grp., Inc. v. Anthropic PBC*,
   No. 24-CV-03811-EKL, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) .............................7, 8

*Doe 1 v. GitHub, Inc.*,
   No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024), *appeal
   argued*, No. 24-7700 (9th Cir. Feb. 11, 2026) ................................................................ *passim*

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   No. 222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ........................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................................................................7

*Falkner v. General Motors*,
   393 F. Supp 3d 927, 927 (C.D. Cal 2018) ..............................................................................5

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................................................................12

*Harrington v. Pinterest, Inc.*,
   No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)........................7, 13

ii

*Logan v. Meta Platforms, Inc.*,
   No. 22-CV-01847-CRB, 2023 WL 3668520 (N.D. Cal. May 24, 2023)..............................2, 8

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...............................................................................................1

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007)..............................................................................................................1

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................................................................2

*Rentmeester v. Nike, Inc.*,
   No. 3:15-CV-00113-MO, 2015 WL 3766546 (D. Or. June 15, 2015), *aff'd*, 883
   F.3d 1111 (9th Cir. 2018) .....................................................................................................9

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ......................................................................................2, 9, 10

*The Intercept Media, Inc. v. OpenAI, Inc.*,
   767 F. Supp. 3d 18 (S.D.N.Y. 2025).....................................................................................12

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) .......................................................................... *passim*

**Statutes**

17 U.S.C. § 1202(b)(1) ....................................................................................................... *passim*

17 U.S.C. § 1202(b)(3) ....................................................................................................... *passim*

17 U.S.C. § 1202(c) ...............................................................................................................11

6219655

**<u>NVIDIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS</u>**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 2, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Eumi K. Lee, in Courtroom 7 of the Robert F. Peckham Federal Building & United States Courthouse, located at 280 South 1st Street, San Jose, California 95113, Defendant NVIDIA Corporation will and hereby does move to dismiss the complaint filed by Plaintiff Austin Beaulier in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice of Motion, the following memorandum of points and authorities, all pleadings and papers on file or to be filed in this action, counsel's arguments, and any other matters properly before the Court.

Pursuant to Section VIII.A. of the Standing Order for Civil Cases Before Judge Eumi K. Lee, counsel for NVIDIA Corporation met and conferred with counsel for Plaintiff Austin Beaulier via videoconference on June 11, 2026, regarding the underlying bases for its Motion to Dismiss. The parties were unable to resolve or narrow the disputed issues that form the basis of this Motion.

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4(a)(3), NVIDIA Corporation states that this Motion to Dismiss raises the following issues to be decided by the Court:

1.      Whether Plaintiff Austin Beaulier has alleged the removal or alteration of copyright management information (CMI), as required under 17 U.S.C. § 1202(b)(1);

2.      Whether Beaulier has alleged that the purported removal or alteration of CMI was done intentionally, as required under 17 U.S.C. § 1202(b)(1);

3.      Whether Beaulier has alleged the requisite mental state of "knowing, or . . . having reasonable grounds to know" that the purported removal or alteration of CMI "will induce, enable, facilitate, or conceal an infringement," as required under 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3);

4.      Whether Beaulier has alleged the requisite identicality between his works and the CMI-stripped works, as required under 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3);

5.      Whether Beaulier has alleged the distribution of his works, as required under 17 U.S.C. § 1202(b)(3); and

6.      Whether Beaulier has alleged that NVIDIA had actual knowledge that CMI was removed or altered without authority when allegedly distributing his works, as required under 17 U.S.C. § 1202(b)(3).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**[1]

Plaintiff Austin Beaulier has filed a series of copycat actions alleging that training artificial intelligence models violates § 1202(b)(1) and § 1202(b)(3) of the Digital Millennium Copyright Act ("DMCA").[2] It does not. Enacted in 1998 with Napster-era piracy in mind, DMCA § 1202(b) was designed to prevent a pirate from, for example, stripping the author's identity from the songs in a CD, making copies of the songs, and scattering the authorless copies across the internet. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 458 (2007); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). NVIDIA's alleged training of generative AI 3D models bears no resemblance to the "trafficking in technology" Congress had in mind when it passed the DMCA. *MDY Indus.*, 629 F.3d at 942. NVIDIA does not train its models to output copies of Beaulier's 3D objects without his name so that others can copy them endlessly. Beaulier concedes this point, admitting that NVIDIA's technology is "designed to create new 3D models and digital environments." Complaint ("Compl.") at ¶ 91. That difference puts NVIDIA squarely outside the scope of the DMCA. Unsurprisingly, then, Beaulier's claims fail for multiple independent reasons.

*First*, nowhere does the Complaint plausibly allege that NVIDIA removed or altered copyright management information ("CMI"), as required by § 1202(b)(1). Compl. ¶ 112. Instead, the Complaint alleges that the CMI was omitted by Microsoft before the training data ever made its way to NVIDIA. And, with respect to NVIDIA, Beaulier pleads only conclusory allegations as to removal—often framed in the disjunctive alongside permissible conduct—such that there is no violation pled.

*Second*, the Complaint fails to allege that NVIDIA *intentionally* removed or altered any CMI, another requirement of § 1202(b)(1). Courts have held that where the removal of CMI is simply a function of technical processing with some other goal, any removal is unintentional.

---

[1] Throughout this brief, unless otherwise indicated, emphases were added to quotations, while internal citations, footnotes, brackets, ellipses, and the like were omitted from them.

[2] *Beaulier v. Meta Platforms*, No. 3:26-cv-02632-CRB (N.D. Cal.); *Beaulier v. Roblox Corp.*, No. 3:26-cv-02642-JSC (N.D. Cal.); *Beaulier v. Microsoft Corp.*, No. 2:26-cv-01031-JNW (W.D. Wash.).

6219655

*Logan v. Meta Platforms, Inc.*, No. 22-CV-01847-CRB, 2023 WL 3668520, at *6 (N.D. Cal. May 24, 2023). Here, Beaulier concedes that any loss of CMI was an incidental byproduct of preprocessing applied to all 3D assets, regardless of whether CMI was present. Compl. ¶ 105 (alleging that any omission of CMI was an "inherent consequence" of an AI training pipeline).

*Third*, Beaulier fails to plead that NVIDIA knew or should have known that its purported conduct would enable an infringement, a necessary element for both § 1202(b)(1) and § 1202(b)(3). In fact, Beaulier fails to identify a single act of infringement. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018). And for good reason: Beaulier does not allege that any model outputs are copies of the works on which the models are trained. Unsurprisingly, then, he pleads no facts suggesting that NVIDIA knew (or should have known) its purported removal of CMI would contribute to this (unidentified) infringement. He instead parrots statutory language in conclusory terms.

*Fourth*, as to both claims, Beaulier does not and cannot allege that NVIDIA's models were trained on identical copies of his works that were stripped of CMI. "[N]o DMCA violation exists where the works are not identical," *i.e.*, where the allegedly CMI-stripped works are not identical to the asserted works. *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022); *accord Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *9 (N.D. Cal. Jan. 22, 2024), *appeal argued*, No. 24-7700 (9th Cir. Feb. 11, 2026). Beaulier does not just fail to allege identicality; he pleads significant transformation between his asserted works and the allegedly stripped works used in training. Compl. ¶¶ 150–51 (alleging that NVIDIA applied "preprocessing operations—including format conversion, mesh normalization, rendering, voxelization, and related transformations" to the works).

*Fifth*, Beaulier fails to allege any distribution of his supposedly CMI-stripped works, as required by § 1202(b)(3). The Complaint instead fixates on NVIDIA's alleged *internal use* of Beaulier's allegedly CMI-stripped works rather than external distribution.

*Finally*, just as Beaulier failed to plead any facts showing that NVIDIA *intentionally* removed CMI for his § 1202(b)(1) claim, he fails to plead any facts showing that NVIDIA *knew* any CMI had been removed or altered without authorization as required by § 1202(b)(3).

2

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

Accordingly, NVIDIA respectfully requests that the Court grant its motion to dismiss with prejudice.

## II.    BACKGROUND

In this putative class action, Beaulier alleges that he creates digital 3D objects and uploads them to publicly available websites, such as Sketchfab, Thingiverse, and Polycam. Compl. ¶ 28. When posting his works on these platforms, he claims that his works "were accompanied by" copyright management information, "including the creator's identity, the title of the work, licensing terms governing reuse, attribution requirements, and other information identifying the conditions under which the work could be used." *Id.* ¶ 94.

Beaulier implies—without plainly alleging—that some of his objects were included in the Microsoft "TRELLIS-500K" AI training dataset, a derivative of the academic dataset Objaverse-XL. *Id.* ¶¶ 13, 83, 133. The Complaint acknowledges that Microsoft curated and assembled the TRELLIS-500K dataset and alleges that "Microsoft's release of TRELLIS-500K omits the per-file license information. . . ." *Id.* ¶ 112. He claims that the TRELLIS-500K dataset "strips away critical CMI that originally accompanied those works." *Id.* ¶ 14. Beaulier does not allege that NVIDIA played any role in assembling the TRELLIS-500K dataset.

Beaulier accuses NVIDIA's alleged "generative 3D models" writ large. *Id.* ¶ 12. He claims that NVIDIA used objects from Microsoft's TRELLIS-500K dataset to train NVIDIA's "commercial AI infrastructure." *Id.* ¶¶ 14, 111. He also alleges that NVIDIA used the Objaverse-XL and TRELLIS-500K datasets "as a source map" to obtain its own copies of 3D objects that were then allegedly incorporated into "AI training datasets." *Id.* ¶¶ 89, 118.

Beaulier alleges that, "[u]pon information and belief, in the course of sourcing, processing, and ingesting these 3D assets from TRELLIS-500K into its machine-learning pipelines, NVIDIA stripped the underlying works of CMI. . . ." *Id.* ¶¶ 16, 89, 99–102 (alleging that various transformations in the machine learning process remove CMI). Specifically, Beaulier claims that "[t]raining generative artificial intelligence systems requires converting raw creative works into machine-learning representations. . . ." *Id.* ¶ 98. "[T]his process involves transforming raw 3D asset files into numerical or visual representations that can be used as training inputs" the

3

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

machine learning model can ingest. *Id.* ¶ 99. His Complaint identifies a few examples of such transformations: "format conversion, mesh normalization, rendering, voxelization, and other transformations designed to convert the [3D object's] geometry and textures" into training-compatible data structures. *Id.* ¶ 100. Beaulier alleges that during this process, CMI is separated from the "creative content" of the objects—a "foreseeable and inherent consequence of using large-scale creative datasets to train generative artificial intelligence systems." *Id.* ¶¶ 101–05.

Beaulier also alleges that NVIDIA has "incorporated" Microsoft's TRELLIS model, which was trained on the TRELLIS-500K dataset, into its "NVIDIA AI Blueprints," without any explanation of what the blueprint is, how it works, how the TRELLIS model relates to NVIDIA, or how the "NVIDIA AI Blueprints" relate to the claims alleged here. *Id.* ¶¶ 113–17. The "NVIDIA AI Blueprints"—which rely on a Microsoft generative AI model for 3D object generation, as Beaulier concedes—are the only particular NVIDIA offerings that Beaulier identifies in his Complaint.

In his claims for relief, Beaulier alleges that NVIDIA violated two subsections of the DMCA: 17 U.S.C. § 1202(b)(1) and § 1202(b)(3). *Id.* ¶¶ 145–61, 162–74.

## III.    LEGAL STANDARD AND RELEVANT STATUTES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than sheer possibility. *Id.* ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" either. *Iqbal*, 556 U.S. at 678.

Section 1202(b) recites:

**(b) Removal or Alteration of Copyright Management Information.**—No person shall, without the authority of the copyright owner or the law—

(1) intentionally remove or alter any copyright management information,

. . . or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

## IV.    ARGUMENT

Beaulier's Complaint should be dismissed in its entirety because it fails to plausibly allege several required elements of his claims under § 1202(b)(1) and § 1202(b)(3).

### A.    Beaulier Fails to Plead the Removal or Alteration of CMI as Required under § 1202(b)(1)

Beaulier's Complaint fails to plausibly allege that NVIDIA "removed" or "altered" the CMI of his 3D models. Instead, the Complaint uses disjunctive language to allege that NVIDIA "removed, failed to . . . preserve[], **or** otherwise disregarded" the CMI of Beaulier's works during the process of training.[3] Compl. ¶ 89; *id.* ¶¶ 63, 64, 103, 109, 118, 134 (all alleging that NVIDIA removed, failed to preserve, or disregarded CMI). Beaulier fails to plausibly allege removal under 17 U.S.C. § 1202(b)(1) for three reasons.

*First*, by its plain terms, § 1202(b)(1) does not prohibit the "failure to preserve" or "disregard" of CMI; it only covers certain types of "remov[al]" or "alter[ation]." 17 U.S.C. § 1202(b)(1). *Falkner v. General Motors* confirms this understanding. 393 F. Supp. 3d 927, 927 (C.D. Cal. 2018). In *Falkner*, the plaintiff asserted a § 1202(b) violation because the defendant took a picture of his mural from an angle that excluded his signature. *Id.* The court disagreed, explaining that § 1202(b) prohibitions on "removal" and "alteration" did not encompass the mere failure to preserve copyright information. *Id.* at 938–39 (citing Black's Law Dictionary (10th ed. 2014)). Other trial courts within the Ninth Circuit have held the same. *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 222CV01463RGKMAA, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) ("The DMCA prohibits removing or altering CMI; it does not prohibit merely

---

[3] Although the Complaint mentions "alteration" in passing, the Complaint alleges no facts whatsoever regarding any alleged "alteration" of CMI by NVIDIA. Accordingly, although this motion focuses principally on Beaulier's "removal" allegations, it should be understood as challenging both the alleged removal and alteration.

omitting CMI from an infringing work."); *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, No. CV1202215RGKVBKX, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) (Section 1202(b) of the DMCA does not prohibit "omissions" of CMI). Beaulier's allegations have the same flaw: they claim that NVIDIA "failed to preserve" or "disregarded" CMI when training AI models. Compl. ¶ 89. Such statements look no different than alleging a defendant failed to include or omitted CMI when taking a photograph, a theory that many courts have found untenable. His two theories of "failing to preserve" CMI and "disregarding" CMI accordingly do not state a claim under § 1202(b)(1).

*Second*, Beaulier's references to "removal" fare no better because they either merely recite the text of § 1202(b)(1) or allege that a third party removed CMI, neither of which is sufficient. In paragraph 152, for example, he asserts that NVIDIA "intentionally removed, altered, or caused the removal or alteration of CMI associated with the works, including creator attribution, licensing terms, and other identifying information," which simply parrots the language of § 1202(b)(1). *Id.* ¶ 152. Other paragraphs suffer from the same pleading defect. *Id.* ¶¶ 157, 169. None of the paragraphs provides any indication of what actions NVIDIA allegedly took that purportedly constitute intentional removal. And simply repeating the legal standard does not plead facts sufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023).

The few facts Beaulier does allege about CMI removal bear no connection to NVIDIA. Paragraph 112 of Beaulier's Complaint alleges that the "TRELLIS-500K dataset is a Microsoft-curated collection of approximately 500,000 three-dimensional model assets" and that "Microsoft…omit[ted] the per-file license information" associated with his works when assembling the TRELLIS-500k dataset. Compl. ¶ 112. Yet nowhere does Beaulier explain how *Microsoft's* "omi[ssion] of per-file license information" relates to *NVIDIA's* removal of CMI. *Andersen*, 700 F. Supp. 3d at 872 ("[P]laintiffs must . . . allege plausible facts regarding *which* defendants they contend did the stripping or altering in violation of the DMCA and *when* that occurred.").

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

*Third*, by pleading in the disjunctive, Beaulier has not affirmatively alleged "removal" at all. Instead, paragraphs 63 and 89 allege only that CMI was "*removed*, failed to be preserved, *or* otherwise disregarded." *Id.* ¶¶ 63, 89. Thus, as written, Beaulier's Complaint has alleged only that NVIDIA took at least one of those actions. This does not suffice where only removal could potentially be a basis for liability.

*In re Century Aluminum Company Securities Litigation* rejects Beaulier's approach to disjunctive pleading. 729 F.3d 1104 (9th Cir. 2013). As the Ninth Circuit has held, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *Id.* at 1108. "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* Similarly here, where Beaulier pleaded three categories in the disjunctive, one cannot reasonably infer anything about "removal." Instead, because Beaulier's allegations "are consistent with both [his] theory of liability and [an] innocent alternative," he has failed to state a claim under § 1202(b)(1). *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014).

In sum, Beaulier has failed to plausibly allege removal under § 1202(b)(1).

### B. Beaulier Fails to Plead That the Alleged Removal or Alteration of CMI Was Done Intentionally as Required under § 1202(b)(1)

To plead a § 1202(b)(1) violation, the plaintiff must also allege that the defendant acted *intentionally* when removing CMI. *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022). "At the pleading stage, this requires pleading facts plausibly showing that the alleged infringer had this required mental state." *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024); *Harrington*, 2022 WL 4348460, at *4; *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-CV-03811-EKL, 2025 WL 1487988, at *6 (N.D. Cal. Mar. 26, 2025). Even if Beaulier had alleged removal (he has not for the reasons explained in the preceding section), his allegations fail to establish that NVIDIA had the requisite intent. At most,

the Complaint alleges that the omission of CMI occurred as a byproduct of a standardized training process, which is insufficient to state a claim under § 1202(b)(1).

*Logan v. Meta Platforms, Inc.* is instructive. 2023 WL 3668520, at *6–7. There, the plaintiff alleged that Meta removed CMI from his photos by cropping out his signature when turning the photos into thumbnails. *Id.* at *6. But "[c]ritically, *every* photo, when turned into a thumbnail . . . is cropped to a small, uniform size." *Id.* Because the photos were uniformly cropped, the CMI removal was an "unintended side effect" of the creation of the thumbnail. *Id.* The court thus found that the allegations supported, at most, an inference of "accidental"—not intentional—removal. *Id.* at *7.

The same reasoning applies here. Beaulier's Complaint describes a preprocessing workflow aimed at transforming raw 3D assets into training-compatible data structures. Such preprocessing allegedly involves operations like format conversion, mesh normalization, rendering, and voxelization, "designed to" transform raw 3D asset files into numerical or visual representations suitable for machine learning. Compl. ¶¶ 98–101. His allegations describe that this workflow is applied to all 3D assets, with no differentiation based on whether CMI is present. *Id*. ¶ 97. Beaulier further alleges that any removal of CMI in this process is an "inherent consequence" of the training pipeline. *Id*. ¶ 105. As in *Logan*, these allegations support, at most, an inference that any loss of CMI was an incidental side effect of the training process, not that NVIDIA intentionally removed CMI.

Other courts in this District have applied *Logan* to dismiss § 1202(b)(1) claims arising from AI training. For example, in *Tremblay*, the court held that a conclusory allegation that the defendants removed CMI "by design" during training was insufficient to state a claim absent supporting facts. *Tremblay*, 716 F. Supp. 3d at 779. The court contrasted the allegations with those in *Doe 1*, where the plaintiffs alleged that defendants knew where CMI appeared and affirmatively trained their programs to ignore or remove CMI. *Id.* (citing *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023)). Likewise, in *Concord Music*, the Court dismissed the plaintiffs' § 1202(b)(1) claim because they failed to allege specific facts reflecting intentional removal. *Concord Music*, 2025 WL 1487988, at *6–7. The Court again contrasted the allegations

with those in *Doe 1*, emphasizing the absence of specific facts reflecting the defendant's intentional removal of CMI. *Id.* at \*7 (citing *Doe 1*, 672 F. Supp. 3d at 878).

Beaulier's allegations similarly fall short. He fails to allege that NVIDIA acted intentionally. To the contrary, his allegations concede that any omission of CMI was an "inherent consequence" of a standardized training pipeline. Compl. ¶ 105. His allegations are insufficient to state a claim.

### C. Beaulier Fails to Plead That NVIDIA Had the Additional Requisite Mental State as Required under Both § 1202(b)(1) and § 1202(b)(3)

Beaulier also fails to plausibly allege that NVIDIA "possess[ed] the mental state of knowing, or having a reasonable basis to know, that [its purported] actions will induce, enable, facilitate, or conceal infringement"—a requirement for both a § 1202(b)(1) claim and a § 1202(b)(3) claim. *Stevens*, 899 F.3d at 673. To satisfy this element, Beaulier "must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi,' that [NVIDIA] was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Tremblay*, 716 F. Supp. 3d at 778–79. Beaulier's Complaint does not allege this requisite mental state for two independent reasons.

*First*, Beaulier never alleges an underlying act of future infringement. Sections 1202(b)(1) and (b)(3) require a connection between the proscribed activity—either removal or distribution—and an act of future infringement. *Stevens,* 899 F.3d at 674–75 ("[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI."); *Rentmeester v. Nike, Inc.*, No. 3:15-CV-00113-MO, 2015 WL 3766546, at \*8 (D. Or. June 15, 2015), *aff'd*, 883 F.3d 1111 (9th Cir. 2018) ("[Plaintiff] cannot state a claim under the DMCA without an underlying act of infringement."). Beaulier's own allegations conclusively rule out future copyright infringement: He pleads significant transformation between his asserted works and the model outputs. Compl. ¶ 107 ("[T]rain[ing] generative AI systems capable of producing *new* 3D objects . . . ."). Beaulier therefore does not and cannot identify a likely act of future infringement connected to NVIDIA's alleged omission of CMI in the AI training process.

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

*Second*, Beaulier fails to plausibly allege that NVIDIA knew its purported conduct would contribute to such an (unidentified) future infringement. Beaulier's theory of knowledge is generic. He asks the Court to infer from the mere fact of alleged CMI omission that NVIDIA intended to prevent some unnamed third party from "identify[ing] the creators of the underlying works. . . . " *Id.* ¶ 156. The Ninth Circuit has squarely rejected this theory of knowledge. In *Stevens*, the plaintiffs alleged that "because one method of identifying an infringing [work] has been impaired [via CMI removal], someone *might* be able to use [plaintiffs' works] undetected." *Stevens*, 899 F.3d at 673. The Ninth Circuit rejected this "generic approach" because "it simply identifies a general possibility that exists whenever CMI is removed." *Id.*

The district court's decision in *Tremblay* is also on point. There, the plaintiffs alleged that OpenAI omitted CMI when training ChatGPT, and in so doing, OpenAI "had reasonable grounds to know" that such omissions would contribute to infringement "because ChatGPT users will not know if any output is infringing." *Tremblay*, 716 F. Supp. 3d at 779. The *Tremblay* court disagreed, holding that an inability to identify the creator of the underlying work has no "bearing on whether the alleged removal of CMI in an internal database will knowingly enable infringement." *Id.* The same reasoning applies here. As in *Tremblay*, Beaulier's allegations rely on the purported removal of CMI in internally processed and internally stored versions of data. Compl. ¶ 156. And like the *Tremblay* plaintiffs, Beaulier asks the Court to infer from the allegations of mere CMI removal that NVIDIA also had the requisite mental state under § 1202(b)(1). *Stevens* and *Tremblay* foreclose that inference.

Because Beaulier cannot identify any underlying infringement and cannot allege how NVIDIA knew that its actions would further or conceal any such infringement, his § 1202(b) claims fail.

### D. Beaulier Fails to Plead Identicality as Required under § 1202(b)(1) and § 1202(b)(3)

Both of Beaulier's § 1202(b) claims fail because he does not plausibly allege that the CMI-stripped works that NVIDIA allegedly used in AI training are *identical* to his asserted works. "Section 1202(b) claims lie only when CMI is removed or altered from an identical copy

10

6219655

of a copyrighted work." *Doe 1*, 2024 WL 235217, at \*8; *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 961 n.12 (N.D. Cal. 2024); *Tremblay*, 716 F. Supp. 3d at 780.[4] Instead, the CMI-stripped copies must be identical to the asserted work.

The identicality requirement follows from the text of § 1202. The statute defines CMI as information "conveyed in connection with *copies* . . . of a work." 17 U.S.C. § 1202(c). And § 1202(b) focuses on the "remov[al] or alter[ation]" of CMI. *Id.* § 1202(b). Beaulier's § 1202(b)(1) claim therefore requires affirmative acts directed at removing information from identical *copies* of his works. Beaulier's § 1202(b)(3) claim likewise requires the distribution of identical copies of the work without their CMI. The statute's plain text prohibits CMI-stripped "works" or "*copies* of works," knowing that their CMI has been removed or altered. *Id.* § 1202(b)(3). Thus, both § 1202(b)(1) and § 1202(b)(3) impose an identicality requirement on Beaulier.

By pleading that his asserted works were significantly transformed during training, Beaulier forecloses any plausible inference that his asserted works are identical to the CMI-stripped works. He alleges that after obtaining copies of the asserted works, Compl. ¶¶ 95–96, NVIDIA processed the copies "through machine-learning preprocessing pipelines designed to convert raw 3D assets into training inputs suitable for generative AI systems." *Id.* ¶ 97. The raw 3D asset files undergo multiple transformations that convert the models' geometry and textures into training-compatible numerical or visual representations of those models. *Id.* ¶¶ 99–100. As Beaulier put it, the "preprocessing operations" include "format conversion, mesh normalization, rendering, voxelization, and related *transformation*." *Id.* ¶ 151. Beaulier's own allegations establish that the materials NVIDIA allegedly used in training were no longer copies of his asserted works, but rather transformed data structures.

That difference matters. In *Doe 1*, the plaintiffs alleged that the output at issue was a "modified format," "variation," or "functional equivalent" of the original code. *Doe 1*, 2024 WL 235217, at \*9. The court held that the difference between the original work and the modified

---

[4] The Ninth Circuit appeal in *Doe 1* will determine whether the identicality requirement applies to claims under DMCA § 1202(b).

11

6219655

version was a "fundamental defect" defeating any § 1202(b) liability. *Id.* So too here: Beaulier's allegations describe NVIDIA's transformation of the original 3D models into a different format and representation. In other words, there is no allegation that NVIDIA used identical copies of Beaulier's work. Just as in *Doe 1*, Beaulier has "pleaded [himself] out of [his] Section 1202(b)(1) and 1202(b)(3) claims." *Id.* at *8.

### E.    Beaulier Fails to Plead Distribution of His Works as Required under § 1202(b)(3)

Beaulier fails to plead distribution of copies of his works without CMI. "Under the plain language of the [DMCA], liability requires distributing the original 'works' or 'copies of the works.'" *Tremblay*, 716 F. Supp. 3d at 780. Nowhere in the Complaint does Beaulier so allege.

The Complaint alleges only ***internal*** use of "CMI-stripped representations," without any allegation of distribution beyond parroting the statute. A plaintiff fails to state a § 1202(b)(3) claim where he merely recites the statutory standard without identifying how the alleged distribution occurred. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 32 (S.D.N.Y. 2025) (dismissing § 1202(b)(3) claims where the complaint lacked factual support for distribution).

In *Intercept Media v. OpenAI*, for example, the court rejected the plaintiff's allegations that OpenAI and Microsoft had distributed the plaintiff's news articles with one another, explaining that allegations concerning the defendants' business relationship and shared computing infrastructure did not establish actual distribution of any copyrighted works. 767 F. Supp. 3d at 32–33. The same inferential gap exists here. Beaulier alleges that NVIDIA "used, distributed, and incorporated . . . CMI-stripped representations of Beaulier's works within the training datasets used to develop its generative artificial intelligence systems," Compl. ¶ 168, and violated § 1202(b)(3) "[b]y using and incorporating these works into its generative AI training datasets and systems." *Id.* ¶ 171. These allegations concern only NVIDIA's use and incorporation of purported CMI-stripped representations in its datasets and systems. Beaulier provides no factual allegations of *actual sharing* of his works by NVIDIA with others, as required. As in

*Intercept Media*, mere allegations concerning circumstances that may have permitted distribution do not plausibly establish that distribution occurred. This is fatal to Beaulier's § 1202(b)(3) claim.

### F.    Beaulier Fails to Plead Knowledge of CMI Removal as Required under § 1202(b)(3)

The failure to plead the requisite § 1202(b) mental state, *see* Section IV.C, *supra*, is also fatal to Beaulier's § 1202(b)(3) claim. *Harrington*, 2022 WL 4348460, at *3. But § 1202(b)(3) imposes an additional knowledge requirement: the plaintiff must plausibly allege that the defendant distributing copyrighted material had "actual knowledge" that CMI was removed or altered without authority. *Id.* at *4. Beaulier alleges no such facts. In *Harrington*, the court held that the plaintiff failed to state a § 1202(b)(3) claim because he did not allege facts showing that Pinterest knew any particular work contained CMI or that CMI had been removed from that work. *Id.* at *4–5. Here, the Complaint contains only conclusory allegations that NVIDIA "knew, or had reasonable grounds to know, that the CMI associated with those works had been removed or altered without the authority of the copyright owners." Compl. ¶ 169. Beaulier alleges no facts showing that NVIDIA knew any particular work contained CMI, knew that any such CMI had been removed or altered, or knew that any such removal or alteration was unauthorized. To the contrary, the Complaint alleges that Microsoft's release of the TRELLIS-500K dataset omitted certain licensing information. *Id.* ¶ 112. But it alleges no facts supporting the inference that NVIDIA knew Microsoft had removed or altered CMI, much less that NVIDIA knew any such removal or alteration was unauthorized. Thus, at most, the Complaint alleges NVIDIA's subsequent use of a dataset that purportedly lacked CMI – not "actual knowledge" that CMI had been removed or altered without authorization from any particular work.

## V.    CONCLUSION

For the foregoing reasons, NVIDIA requests that the Court dismiss Beaulier's Complaint in its entirety.

///

///

///

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655

Dated: June 22, 2026                                    KEKER, VAN NEST & PETERS LLP


                                          By:    /s/ Katie Lynn Joyce
                                                 SHARIF E. JACOB
                                                 KATIE LYNN JOYCE
                                                 VICTOR CHIU

                                                 Attorneys for Defendant NVIDIA
                                                 CORPORATION

NVIDIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6219655