William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Phone: 866.252.0878
wedelman@milberg.com

*Attorney for Plaintiff and Proposed Class*
*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NVIDIA CORPORATION,<br><br>    Defendant. | Civil Action No. 5:26-cv-02647-EKL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: September 2, 2026<br>Time: 10:00 a.m.<br>Courtroom: 7 – 4th floor<br>Judge: Hon. Eumi K. Lee<br><br>Date Filed: March 26, 2026<br><br>Trial Date: Not Set |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ........................................................................................................................ 4

    A.    Plaintiff States a § 1202(b)(1) Claim Based on NVIDIA's Removal of CMI. ................... 4

        1.    The Complaint Alleges Removal, Not Mere Omission. ....................................... 5

        2.    NVIDIA's Alleged Process Supports Intentional Removal. .................................. 9

    B.    NVIDIA's Remaining Legal Attacks on the § 1202 Claims Fail. .................................. 12

        1.    Plaintiff Adequately Pleads the Required Scienter. ............................................. 12

        2.    NVIDIA's "Identicality" Rule Has No Basis in § 1202. ...................................... 15

    C.    Plaintiff Adequately Pleads a § 1202(b)(3) Claim Based on NVIDIA's Distribution of Works Stripped of CMI. ............................................................................................ 17

        1.    NVIDIA Allegedly Distributed and Commercialized CMI-Stripped Copies and Representations. ...................................................................................... 17

        2.    NVIDIA's Alleged Removal Supports Knowledge That CMI Was Removed. ... 18

    D.    Any Dismissal Should Be With Leave to Amend. ........................................................ 19

CONCLUSION .................................................................................................................... 19

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF AUTHORITIES</u>

**CASE(S)**                                                                                                    **PAGE(S)**

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,
    667 F. Supp. 3d 411 (S.D. Tex. 2023) .......................................................................................... 15

*A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
    2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) .............................................................................. 6

*Andersen v. Stability AI Ltd.*,
    700 F. Supp. 3d 853 (N.D. Cal. 2023) .......................................................................................... 8

*Andersen v. Stability AI Ltd.*,
    744 F. Supp. 3d 956 (N.D. Cal. 2024) ........................................................................................ 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 4, 7

*Batra v. PopSugar, Inc.*,
    2019 WL 482492 (N.D. Cal. Feb. 7, 2019) ................................................................................ 14

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
    2024 WL 3522196 (N.D. Cal. July 23, 2024) ............................................................................ 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................... 4

*Concord Music Grp., Inc. v. Anthropic PBC*,
    2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ........................................................................... 10

*Concord Music Grp., Inc. v. Anthropic PBC*,
    2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) ........................................................................ 10, 14

*Doe 1 v. GitHub, Inc.*,
    672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................................. passim

*Doe 1 v. GitHub, Inc.*,
    2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) .......................................................................... 15

*Doe 1, et al v. Github, Inc., et al.*,
    No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ......................................... 15

*Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*,
    764 F.2d 619 (9th Cir. 1985) ....................................................................................................... 4

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Falkner v. Gen. Motors LLC,*
  393 F. Supp. 3d 927 (C.D. Cal. 2018) ............................................................................... 6

Free Speech Sys., LLC v. Menzel,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................................................ 18

*GC2 Inc. v. Int'l Game Tech. PLC,*
  255 F. Supp. 3d 812 (N.D. Ill. 2017) ................................................................................. 6

*Harrington v. Pinterest, Inc.,*
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ........................................................... 16, 19

*ICONICS, Inc. v. Massaro,*
  192 F. Supp. 3d 254 (D. Mass. 2016) .............................................................................. 15

*In re Century Aluminum Co. Sec. Litig.,*
  729 F.3d 1104 (9th Cir. 2013) ........................................................................................... 9

*Izmo, Inc. v. Roadster, Inc.,*
  No. 5:18-cv-06092, 2019 WL 13210561 (N.D. Cal. May 17, 2019) ...................................... 12

*Kadrey v. Meta Platforms, Inc.,*
  2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ................................................................. 10, 14

*Leadsinger, Inc. v. BMG Music Publ'g,*
  512 F.3d 522 (9th Cir. 2008) ........................................................................................... 19

*Logan v. Meta Platforms, Inc.,*
  2023 WL 3668520 (N.D. Cal. May 24, 2023) ................................................................... 11

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) ......................................................................................... 19

*Mango v. BuzzFeed, Inc.,*
  970 F.3d 167 (2d Cir. 2020) ...................................................................................... 13, 17

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) ........................................................................................... 4

*McGary v. City of Portland,*
  386 F.3d 1259 (9th Cir. 2004) ........................................................................................... 4

*New York Times Co. v. Microsoft Corp.,*
  777 F. Supp. 3d 283 (S.D.N.Y. 2025) ......................................................................... 10, 14

iv

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018) ........................................................................................ 13

*Robbins v. Oakley, Inc.*,
   2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) .............................................................. 12

*Schneider v. YouTube, LLC*,
   2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) ........................................................... 12, 14

*Splunk Inc. v. Cribl, Inc.*,
   662 F. Supp. 3d 1029 (N.D. Cal. 2023).......................................................................... 15

*Stevens v. CoreLogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ......................................................................................... 12

*The Intercept Media, Inc. v. OpenAI, Inc.*,
   767 F. Supp. 3d 18 (S.D.N.Y. 2025) ......................................................................... 10, 18

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024)....................................................................... 11, 12

*Wareka v. Lucy & Co Beauty LLC*,
   2026 WL 841189 (S.D. Cal. Jan. 22, 2026) ..................................................................... 4

**STATUTES**

17 U.S.C. § 1201(d)(2) ............................................................................................................ 15

17 U.S.C. § 1202 ........................................................................................................... passim

17 U.S.C. § 1202(b) ....................................................................................................... passim

17 U.S.C. § 1202(b)(1) ................................................................................................... passim

17 U.S.C. § 1202(b)(3) ................................................................................................... passim

17 U.S.C. § 1202(c) ........................................................................................................ 5, 6, 15

17 U.S.C. § 1202(c)(6)............................................................................................................ 13

17 U.S.C. § 1202(c)(7)........................................................................................................... 5, 7

**RULES**

Fed. R. Civ. P. 8(d)(2)............................................................................................................... 9

Fed. R. Civ. P. 15(a)(2).............................................................................................................. 19

v

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## **INTRODUCTION**

NVIDIA's motion asks the Court to resolve fact-intensive questions about a proprietary AI-training pipeline on the pleadings. The Complaint plausibly alleges that Plaintiff's and Class Members' 3D works were published with copyright management information ("CMI") identifying the creator, source, title, attribution requirements, license terms, and restrictions on AI-training use; that NVIDIA used Objaverse-derived datasets, including TRELLIS-500K, to locate and obtain those works; that NVIDIA processed the works through copying, conversion, rendering, normalization, voxelization, and ingestion pipelines that retained their expressive content while severing their CMI; and that NVIDIA then used, distributed, and incorporated those CMI-stripped copies and representations within the datasets and systems used to develop and deploy its commercial AI technology. Those allegations state claims under 17 U.S.C. §§ 1202(b)(1) and 1202(b)(3).

NVIDIA's attempt to recast § 1202 as limited to Napster-era piracy cannot override the statutory text. Congress prohibited the intentional removal of CMI and the distribution of works or copies knowing CMI had been removed. Those provisions apply where, as alleged here, a commercial actor obtains creator-identified works, severs the rights-management information that governs use, and then uses the resulting CMI-stripped copies or representations in commercial AI systems.

*First*, Plaintiff plausibly alleges removal of CMI. NVIDIA's threshold argument depends on misrepresenting the Complaint as alleging only passive omission or failure to preserve CMI. But the Complaint alleges more than that. It alleges that Plaintiff's works were distributed with CMI attached or conveyed in connection with the works, including creator, license, and related metadata; that NVIDIA used those datasets to locate and obtain the works; and that NVIDIA then copied and processed the works into training inputs that retained the works' expressive value while stripping, separating, or severing the accompanying CMI. NVIDIA cannot defeat those allegations by isolating certain words in the Complaint, by shifting blame to Microsoft, or by arguing that Plaintiff's alternative wording of the same removal theory are deficient.

*Second*, Plaintiff plausibly alleges that the removal of CMI was intentional. NVIDIA argues that any CMI loss here was merely an incidental byproduct of a uniform technical process. But the Complaint

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

alleges that NVIDIA knowingly created and used a training pipeline that preserved what NVIDIA needed from Plaintiff's works—their expressive 3D content—while discarding critical CMI. That is not an accidental formatting issue, it is an alleged design choice in the creation of AI-training inputs. At the pleading stage, those allegations support a reasonable inference that NVIDIA intentionally removed or caused the removal of CMI.

*Third*, Plaintiff plausibly alleges the required scienter under both § 1202(b)(1) and § 1202(b)(3). NVIDIA attempts to impose a summary-judgment burden at the Rule 12 stage by arguing that Plaintiff must plead some separate, future act of infringement by an unidentified third party. But the Complaint alleges a direct connection between CMI removal and NVIDIA's own unauthorized use. The missing CMI mattered because it identified who created the works, where they came from, what attribution and license terms governed them, and whether AI-training use was prohibited. By stripping that information while using the works in commercial AI training, NVIDIA enabled and concealed its own infringing use and made it harder for creators to identify, trace, and police all use of their works.

*Fourth*, NVIDIA's proposed "identicality" requirement does not defeat either claim. Section 1202(b)(1) does not require Plaintiff to allege that NVIDIA distributed anything. And § 1202(b)(3) reaches works and copies of works from which CMI has been removed: it does not impose the output-identicality rule NVIDIA asks the Court to adopt. In any event, the Complaint alleges that NVIDIA obtained actual copies of Plaintiff's 3D works with CMI intact, removed or separated that CMI during processing, and then used the resulting CMI-stripped copies or representations in its AI-training datasets and systems. That is sufficient at the pleading stage.

*Fifth*, Plaintiff plausibly states a § 1202(b)(3) claim. NVIDIA argues that the Complaint alleges only internal use and no distribution. The Complaint does not allege mere passive possession; it alleges that NVIDIA used, distributed, and incorporated CMI-stripped copies and representations within its training datasets and systems, and commercialized the TRELLIS-based model, dataset, and related functionality through platforms and services made available to third-party developers and enterprises.

2

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## FACTUAL BACKGROUND

Plaintiff and Class Members are 3D model artists and creators who distributed their original 3D works on public platforms such as Sketchfab, Thingiverse, Polycam, CGTrader, and other digital asset repositories. *See* ECF No. 1, Complaint ("Compl.") ¶¶ 25–31, 34–45, 65–69, 76–83, 94–95, 121–26. Those works were published with CMI, including creator identity, work title, creator-account or portfolio links, attribution requirements, Creative Commons license terms, source-platform information, and other terms and conditions governing use. *Id.* at ¶¶ 39–46, 65–69, 81, 88, 94–95, 147–48, 164–65. For certain works hosted on Sketchfab, the Complaint also alleges that creators posted them with a machine-readable "NoAI" tag to indicate that the works could not be used for AI model training. *Id.* at ¶¶ 52–64, 128–30.

The Complaint further alleges that researchers and technology companies compiled references to such 3D works into large datasets that function as maps or indexes for downstream users to locate and obtain the underlying works from their original source platforms. *Id.* at ¶¶ 76–89, 91–96. Objaverse-XL, for example, allegedly aggregates more than ten million 3D assets from public repositories while preserving references to original source files, source repositories, and creator accounts. *Id.* at ¶¶ 2, 8, 76–83, 87–88. According to the Complaint, NVIDIA used Objaverse-derived datasets, including TRELLIS-500K, to identify and obtain copies of Plaintiff's and Class Members' works. *Id.* at ¶¶ 13–16, 83–89, 91–97, 111–18, 149–50, 166–67.

After obtaining the works, NVIDIA copied, converted, rendered, normalized, and otherwise processed them through preprocessing pipelines designed to transform raw 3D assets into AI-training inputs. *Id.* at ¶¶ 89–90, 97–103, 118, 150–52, 166–68. The Complaint alleges that this process retained the expressive content of the works—such as their geometry, structure, textures, and visual features—while removing, failing to preserve, or severing the creator attribution, licensing terms, attribution requirements, NoAI restrictions, and other CMI that accompanied the works when originally distributed. *Id.* at ¶¶ 89–90, 101–07, 118, 151–57, 167–71. NVIDIA then allegedly used those CMI-stripped representations to train, package, deploy, and commercialize TRELLIS-based and related generative 3D AI systems, including through NVIDIA AI Blueprints, and NVIDIA's broader revenue-generating AI infrastructure. *Id.* at ¶¶ 107–18, 153–57, 168–71.

3

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff is not required to plead "detailed factual allegations," nor does Rule 8 demand "heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Instead, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is improper where the allegations raise the plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

That principle has particular force where (as here) a complaint presents a developing or novel legal theory. Rule 12(b)(6) dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004). Courts therefore should allow new legal theories to be "explored and assayed in the light of actual facts rather than a pleader's suppositions." *Id*. (quoting *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)).

## ARGUMENT

**A.    Plaintiff States a § 1202(b)(1) Claim Based on NVIDIA's Removal of CMI.**

To state a claim under § 1202(b)(1), a plaintiff must allege: (1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information, (3) that the removal was intentional, and (4) that defendant knew or had reasonable grounds to know that the CMI removal will induce, enable, facilitate, or conceal copyright infringement. *Wareka v. Lucy & Co Beauty LLC*, 2026 WL 841189, at *3 (S.D. Cal. Jan. 22, 2026). At the pleading stage, mental conditions need not be alleged with specificity, a plaintiff need only allege facts supporting a reasonable inference of the required mental state, including whether the removal was intentional and "that the defendant knew or had a reasonable basis to know that the removal or alteration of CMI would aid infringement." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023) (cleaned up).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

#### 1.    The Complaint Alleges Removal, Not Mere Omission.

Plaintiff plausibly alleges that NVIDIA removed CMI from his work when it copied, converted, and ingested his 3D models into its AI training system, in violation of § 1202(b)(1). Plaintiff's works were published with their CMI attached, including creator-identifying information, titles, attribution requirements, licensing terms, source information, and a NoAI tag restricting use in AI training. Compl. ¶¶ 38-49, 52-68. The Objaverse-XL dataset also preserved a link back to each work's origin, a reference to the source files, repositories, and creator accounts it came from. *Id*. at ¶¶ 80-81, 88. Those source links and references are themselves CMI because § 1202(c)(7) includes "identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c)(7). NVIDIA trained on TRELLIS-500K, a subset built primarily from Objaverse-XL. Compl. ¶¶ 111-112. Working from TRELLIS-500K and related Objaverse-derived materials, NVIDIA identified and obtained copies of Plaintiff's actual works from source repositories where the works were distributed with CMI. NVIDIA then "stripped the underlying works of CMI," (*id*. at ¶ 16), processing them into training representations that retained the works' expressive content but no longer carried the accompanying CMI. *Id*. at ¶¶ 63-64, 91-103, 150-151, 167. Those are allegations of removal. NVIDIA offers three reasons to call it something else (Mot. at 5-7), Plaintiff addresses each in turn.

First, NVIDIA says that failing to preserve or disregarding CMI is not "removal," and that the Complaint alleges only "omission" or "failure to preserve." Mot. at 6. NVIDIA's position misreads the Complaint, which alleges affirmative stripping (Compl. ¶¶ 16, 63-64, 89, 91-103, 150-151, 167), as well as the statute. Section 1202 does not only protect information a creator physically stamps onto (or embeds into) their work, it also protects CMI "conveyed in connection with" copies of a work. 17 U.S.C. § 1202(c) The statute reaches a defendant who takes the work and severs that connection. *Id*. The Court in *Doe 1 v. GitHub* rejected the very argument NVIDIA makes here. The defendants in *Doe 1*, developers of the Copilot code-generation tool, argued that their conduct amounted to "the passive non-inclusion of CMI" by neutral technology, not the "active removal of CMI" the statute requires. *Doe 1*, 672 F. Supp. at 857. The court rejected the framing, holding that "[t]his semantic distinction is not meaningful," because the plaintiffs had alleged the defendants trained their systems to ignore or remove the CMI that appeared in

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

the licensed code. *Id*. at 857-58. On those allegations, the court accepted plaintiffs had adequately alleged removal. *Id*. at 858. NVIDIA's omission-versus-removal argument fails for the same reason.

Courts reject "unreasonably crabbed" readings of § 1202(b) that focus the "removal" analysis upon how the CMI travels alongside a creator's work. For example, in *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821 (N.D. Ill. 2017), the court held that reproducing the plaintiff's artwork while dropping the copyright notice that had accompanied it adequately alleged removal, because § 1202(c) protects CMI "conveyed in connection with" the work and does not require the CMI to sit embedded in the copied image itself. *Id.* at 821–22. Here, Plaintiff alleges that CMI accompanied the 3D works on their source platform pages, and that NVIDIA's ingestion process separated that CMI from the works. Compl. ¶¶ 65–69, 81, 88–90, 94–107, 147–52. Plaintiff's allegations that CMI accompanied his works and that NVIDIA's pipeline severed it state removal under § 1202(b). That conclusion follows the statutory design. Section 1202 is designed to protect CMI in digital environments where works can be copied, converted, and exploited at scale. The statute would be gutted if sophisticated actors like NVIDIA could immunize themselves from liability by pointing to downstream activities that made the CMI disappear.

NVIDIA's authorities involve passive omission or failure to capture CMI in a newly created depiction, not purposeful removal from CMI-bearing works. In *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, the defendants allegedly produced knockoff jewelry without carrying the plaintiff's copyright notice onto those products; the court held that § 1202(b) "encompasses only removal and alteration," not omission of CMI "from the copies." 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012). In *Falkner v. Gen. Motors LLC*, the alleged "removal" was the photographer's framing of a new photograph that did not include a different wall bearing the artist's signature; the court held that excluding CMI "by the framing of the scene, rather than by any editing or cropping," was not removal. 393 F. Supp. 3d 927, 938–39 (C.D. Cal. 2018). Neither case cited by NVIDIA involved a defendant allegedly using source-reference datasets to obtain original digital works from repositories where CMI accompanied the works, then processing those works into training inputs that retained their expressive content while severing the accompanying CMI. NVIDIA allegedly did exactly that. Compl. ¶¶ 16, 65–69, 81, 88–90, 94–107, 149–57, 166–71.

6

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Second, NVIDIA says the removal allegations merely parrot the statute, pointing to paragraphs 152, 157, and 169. But those paragraphs sit in the causes of action, where a complaint is supposed to state the elements it will prove. They do not stand alone. They rest on the detailed factual allegations that precede them, which describe how NVIDIA removed the CMI; that Plaintiff's works were distributed with CMI (*Id*. at ¶¶ 38-68); that the Objaverse-derived datasets preserved those connections (*Id*. at ¶¶ 80-88); that NVIDIA obtained the works and ran them through copying, conversion, rendering, normalization, and voxelization (*Id*. at ¶¶ 150-151); and that NVIDIA "stripped the underlying works of CMI" in the process (*Id*. at ¶ 16; *see also Id*. at ¶¶ 63-64, 89, 103, 107, 109, 167). Courts do not read allegations in a vacuum (as NVIDIA suggests); instead, the Court should take the pleading as a whole, and a paragraph stating a legal conclusion is sufficient when other allegations supply the facts behind it. *Iqbal*, 556 U.S. at 678. Read properly, the Complaint alleges removal in more than a dozen places and explains how it occurred.

NVIDIA's Microsoft point fares no better. NVIDIA leans on paragraph 112, which alleges that Microsoft omitted per-file license information when it released TRELLIS-500K, and treats that as establishing that any removal occurred upstream. Compl. ¶ 112. But paragraph 112 is simply providing insight into how Microsoft created a dataset for others (such as NVIDIA) to use. As alleged throughout the Complaint, Objaverse-XL, TRELLIS-500K, and related Objaverse-derived datasets function as source maps or structured indices pointing downstream users to the original source works and creator accounts. Compl. ¶¶ 8, 81–83, 87, 95–96, 112, 118. NVIDIA used TRELLIS-500K and related Objaverse-derived datasets to identify and obtain copies of the works from their source repositories, where those works were distributed with CMI—including creator-identifying information, licensing terms, and attribution requirements. Compl. ¶¶ 88–89, 94–97, 111–12, 118, 149–50, 166–67. NVIDIA then removed that CMI during processing. In addition, the Complaint alleges that Objaverse-XL and related Objaverse-derived materials preserved source-reference information—i.e., links or references pointing to the original source files, repositories, platform pages, and creator accounts—and that TRELLIS-500K was derived primarily from those materials. *Id*. at ¶¶ 8, 81–83, 87, 95–96, 112, 118, 140. Those links and references are themselves CMI because the statutory definition reaches "identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c)(7). The references allow a work to

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

be traced "back to the platform and creator from which [it] originated," and NVIDIA's training datasets and systems "do not retain or communicate that information, thereby severing the connection between the work and the creator." Compl. ¶ 81.

In any event, NVIDIA's Microsoft point does not defeat either claim at the pleading stage for three independent reasons. First, the Complaint alleges that NVIDIA *itself* removed or severed CMI after it obtained the works and during processing of the works through its training pipeline. Compl. ¶¶ 89–90, 149–53, 166–71. Second, § 1202(b)(1) also reaches a defendant that "cause[s]" CMI to be removed or altered, and the Complaint plausibly alleges that NVIDIA's use of a processing pipeline caused the CMI to be severed from the works. 17 U.S.C. § 1202(b)(1). Third, even if some CMI had been removed upstream, § 1202(b)(3) separately reaches distribution of works or copies knowing that CMI has been removed or altered without authority. 17 U.S.C. § 1202(b)(3). Assuming *arguendo* NVIDIA's Microsoft argument, NVIDIA concedes that it knew CMI had been removed from the works. For these reasons, NVIDIA cannot obtain dismissal simply by pointing to Microsoft's role in releasing TRELLIS-500K.

NVIDIA's reliance on *Andersen v. Stability AI Ltd*., 700 F. Supp. 3d 853 (N.D. Cal. 2023) is also misplaced. The defect there was group pleading. The *Andersen* plaintiffs sued several AI companies together, including Stability AI, DeviantArt, and Midjourney, and alleged only that "Defendants" stripped CMI when they "trained Stable Diffusion," without saying which company did what. *Andersen*, 700 F. Supp. 3d at 872. The court could not tell who was responsible as it observed, "there are no facts at all regarding DeviantArt's or Midjourney's training of Stable Diffusion." *Id*. On that record it required plaintiffs to "allege plausible facts regarding which defendants they contend did the stripping or altering . . . and when that occurred," and to stop pleading violations by undifferentiated "defendants." *Id*. That concern does not exist here. The Complaint names a single defendant, NVIDIA; identifies the act, NVIDIA's processing of the works through its own training pipeline; and identifies when the removal occurred—during NVIDIA's processing of the TRELLIS-500K materials it publicly disclosed using for training. Compl. ¶¶ 16, 111, 150-151. Here, there is no ambiguity about who removed CMI.

Third, NVIDIA says that by pleading in the disjunctive, that CMI was "removed, failed to be preserved, or otherwise disregarded," the Complaint alleges no removal at all, because it commits to none of the three. Mot. at 7. NVIDIA's premise is wrong as a matter of law. Rule 8(d)(2) expressly allows a

8

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

plaintiff to "set out 2 or more statements of a claim . . . alternatively," and provides that the pleading "is sufficient if any one of them would be adequate." Fed. R. Civ. P. 8(d)(2). Pleading that NVIDIA removed, failed to preserve, or disregarded CMI is therefore not a defect; it is precisely what the rule permits. In any event, the Complaint repeatedly alleges actual removal and stripping, so Plaintiff's alternative formulations do not erase direct removal allegations.

In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1106 (9th Cir. 2013) does not change this. In Century, aftermarket purchasers had to trace their shares to a single secondary offering to assert a claim, a task the court called "often impossible" because "most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares." Century, 729 F.3d at 1106. The plaintiffs pleaded only that their shares were "directly traceable" to the offering, adding nothing to support it, so their theory was "merely possible rather than plausible." Id. at 1108. Here, by contrast, Plaintiff traces the infringing act to NVIDIA's act of obtaining copies from the source repositories, where the CMI traveled with the works, and alleges that NVIDIA removed that CMI through its training processes. Compl. ¶¶ 16, 149–151. The problem that sank the plaintiffs in Century (an inability to link their shares to any particular source) is absent. NVIDIA's only competing explanation is that Microsoft omitted certain licensing information when it released TRELLIS-500K. But, as described above, Microsoft's actions in releasing a pointer dataset says nothing about NVIDIA's subsequent use of the dataset to access and obtain the works with CMI and then remove CMI from the works it obtained and copied.

### 2.    NVIDIA's Alleged Process Supports Intentional Removal.

NVIDIA next argues that Plaintiff has not adequately alleged that removal of CMI was intentional. Mot. at 7–9. That argument fails because intent may be inferred from the facts alleged, and Plaintiff alleges that the removal of CMI here was more than a "byproduct" or "incidental side effect" of NVIDIA's training process. Mot. at 8.

Although NVIDIA tries to distinguish Doe 1 v. GitHub, Inc. it is instructive on this point. In Doe 1, the plaintiffs alleged that CMI routinely appeared in licensed code used to train Codex and Copilot, that defendants knew such CMI appeared in the training data, and that defendants trained the programs to ignore or remove CMI so the programs would no longer reproduce it. 672 F. Supp. 3d at 858–59. The court held those allegations sufficient to infer that defendants "intentionally designed the programs to

9

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

remove CMI." *Id.* at 858. NVIDIA's reliance (Mot. at 8-9) on this Court's earlier *Concord* decision (*Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025)) is also misplaced. Although the Court initially found the allegations deficient, it later sustained amended § 1202(b) allegations after the plaintiff alleged that Anthropic used tools and processes that removed CMI during dataset creation and training. *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025).

Other cases involving DMCA violations for AI training have also reached the same result and sustained § 1202(b) claims where the plaintiff alleged that a defendant selected or used automated tools that separated expressive content from CMI during AI dataset creation or AI model training. For example, in *Kadrey v. Meta Platforms, Inc.*, the court held that plaintiffs sufficiently alleged intentional removal of CMI under § 1202(b)(1) where Meta allegedly knew its AI model was prone to memorizing and outputting CMI unless CMI was removed from training data, and then took steps to reduce the likelihood that the model would reproduce CMI. 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025). *See New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–16 (S.D.N.Y. 2025) (plausible CMI removal where extraction tools allegedly separated expressive content from author, title, copyright notices, and other CMI during training-set creation); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025) (plausible intentional removal where training-set extraction allegedly omitted CMI).

Here, the Complaint alleges that NVIDIA used Objaverse-derived datasets, including TRELLIS-500K, as a source map to obtain Plaintiff's and Class Members' 3D works, and then copied, converted, rendered, normalized, and ingested those works through machine-learning processing pipelines that separated the expressive content of the works from the creator-identifying information, license terms, attribution requirements, and other CMI that accompanied them when originally distributed. Compl. ¶¶ 89, 97–107, 118, 150–57. As in *New York Times, Intercept*, and *Kadrey*, the allegations here do not plead an accidental loss of metadata; they plead that NVIDIA knowingly created and implemented a training pipeline and process which preserved the expressive value of Plaintiff's and Class Members' 3D works for AI training while removing the CMI. *Id.* ¶¶ 102–07, 151–57.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NVIDIA cites *Logan v. Meta Platforms, Inc.*, 2023 WL 3668520 (N.D. Cal. May 24, 2023), and attempts to frame it as establishing a rule that CMI removal is never intentional when accomplished through some uniform technical process. Mot. at 8–9. But *Logan* held only that plaintiffs did not plausibly allege intentional removal where Facebook's thumbnailing function cropped every photograph to the same small, uniform size, so anything outside the crop—including the plaintiff's visible signature (CMI)—was excluded as an "unintended side effect" of generating thumbnails. *Id.* at *6–7. This case is different. Plaintiff does not merely allege that a signature at the edge of a photograph was incidentally cropped out. Plaintiff alleges that NVIDIA purposefully processed copies of 3D works that were distributed on public repositories with CMI, into training representations that retained the works' expressive content while severing the accompanying CMI. Compl. ¶¶ 65–69, 81, 88–90, 94–107, 118, 149–57, 166–71. Therefore, the omission of CMI here is not an unavoidable consequence; it is an avoidable design choice, which supports intentional removal at the pleading stage.

Similarly, NVIDIA's reliance on *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024), is misplaced. Mot. at 8–9. *Tremblay* dismissed § 1202(b) claims because the plaintiffs alleged only, in conclusory fashion, that OpenAI removed CMI "[b]y design," without facts showing how CMI was removed during training or why the alleged omission gave OpenAI reason to know its outputs would induce, enable, facilitate, or conceal infringement. *Id.* at 779. The court contrasted those allegations with *Doe 1*, where plaintiffs alleged where CMI appeared, that defendants knew it appeared repeatedly, and that defendants trained the programs to ignore or remove it. *Id.* This case is like *Doe 1*, not *Tremblay*. The Complaint alleges that NVIDIA used Objaverse-derived datasets to identify and obtain 3D works accompanied by creator, source, license, attribution, and NoAI CMI, then processed those works into CMI-stripped training inputs used in TRELLIS-based commercial AI systems. Compl. ¶¶ 65–69, 81, 88–90, 94–107, 111–18, 149–57, 166–71. Nor does *Tremblay* defeat Count II: the § 1202(b)(3) claim there failed because plaintiffs did not allege distribution of their books or copies of their books, whereas Plaintiff alleges NVIDIA used, distributed, incorporated, and commercialized CMI-stripped copies or representations in its training datasets, systems, and developer-facing AI platforms. *Tremblay*, 716 F. Supp. 3d at 780; Compl. ¶¶ 107–18, 153, 168, 171.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NVIDIA also misconstrues paragraph 105 of the Complaint. Mot. at 9. The allegations that CMI loss was an inherent consequence of NVIDIA's process explains why NVIDIA had reason to know what *its pipeline* would do; it does not concede that no removal occurred. To be sure, the Complaint repeatedly alleges that NVIDIA removed, altered, or caused the removal of CMI while processing 3D works into machine-learning inputs. Compl. ¶¶ 89, 97–107, 118, 150–57. At this stage, those allegations plausibly plead intentional removal under § 1202(b)(1).

### B. NVIDIA's Remaining Legal Attacks on the § 1202 Claims Fail.

#### 1. Plaintiff Adequately Pleads the Required Scienter.

NVIDIA next makes the dual arguments that Plaintiff fails to allege any underlying act of infringement and fails to allege that NVIDIA knew its conduct would contribute to such an infringement. Mot. at 9-10. NVIDIA's arguments overread *Stevens* and asks the Court to impose a summary-judgment evidentiary burden at the pleading stage. *Stevens* held that a plaintiff ultimately must make an "affirmative showing" that CMI removal is connected to likely infringement. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674–75 (9th Cir. 2018). But courts in this District have rightly declined to treat *Stevens* as a Rule 12 bar where the complaint alleges facts supporting a plausible inference that the defendant knew removal carried a substantial risk of inducing, enabling, facilitating, or concealing infringement. *See Izmo*, 2019 WL 13210561, at *3–4; *Schneider v. YouTube, LLC*, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022); *see also Robbins v. Oakley, Inc.*, 2018 WL 5861416, at *3 (C.D. Cal. Sept. 27, 2018). As referenced above, this is also why *Tremblay*, 716 F. Supp. 3d at 779 does not help NVIDIA's arguments here.

The Complaint easily meets that standard. Plaintiff alleges that the works were distributed with CMI identifying the creator, title, source repository or platform page, attribution requirements, Creative Commons license terms, NoAI restrictions, and other conditions governing use. Compl. ¶¶ 42–46, 52–64, 65–69, 81, 88, 94–95, 147–48, 164–65. It further alleges that NVIDIA used Objaverse-derived datasets to locate and obtain those works, processed them into AI-training representations, and severed the works' expressive content from the CMI needed to determine who created the works, where they came from, what licenses governed them, and whether AI-training use was permitted or prohibited. *Id*. at ¶¶ 54–64, 81, 88–90, 94–107, 118, 150–57. Those allegations explain why removal of CMI enabled NVIDIA's use of the

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

works in commercial AI training in ways that violated, or exceeded, the governing license terms and use restrictions while also obscuring the information necessary to identify, trace, and police further unauthorized use.

NVIDIA's argument—that Plaintiff has failed to allege some future act of infringement by some future bad actor—misses the point. Mot. at 9  The statute is satisfied where the defendant knew or had reason to know that CMI removal would conceal "an infringement," including the defendant's own infringement. *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172–73 (2d Cir. 2020). The removal of the CMI at issue here enabled and concealed *NVIDIA's own infringement*, for example by using the works outside the scope of the license and terms that governed them. CMI expressly includes: "terms and conditions for use of the work[.]" 17 U.S.C. § 1202(c)(6). The Complaint alleges that the works were subject to license conditions, including attribution requirements, noncommercial-use restrictions, share-alike obligations, and, for works marked with Sketchfab's NoAI designation,[1] restrictions on AI-training use. Compl. ¶¶ 39–50, 54–64, 80–81, 88, 94–95. It further alleges that NVIDIA used those works in commercial AI-training systems after having removed the CMI necessary to identify and comply with those conditions. *Id.* at ¶¶ 46–50, 89–90, 102–09, 111–18, 150–57, 167–71. "When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd on other grounds*, 139 S. Ct. 873 (2019). Therefore, contrary to NVIDIA's contention, Plaintiff's allegations do plausibly identify infringement and explain why removal of CMI concealed or facilitated NVIDIA's own infringement. This is also why NVIDIA's contention, again based on *Stevens* and *Tremblay*, that Plaintiff has asserted vague allegations regarding some unnamed third-party infringement (Mot. at 10) misconstrues Plaintiff's theory which is based, in part, on NVIDIA's own infringement.

---

[1] Plaintiff manually applied the NoAI tag to each of his more than four hundred Sketchfab models shortly after Sketchfab introduced that designation option in February 2023—a specific, deliberate act communicating that his models could not be used for AI model training. Compl. ¶¶ 54–60, 128–30. That restriction was machine-readable, embedded in the HTML metadata of the model's webpage, and designed to be detectable by automated systems accessing and processing 3D works for AI-training datasets. *Id.* at ¶¶ 54–58, 63–64, 128–30.

13

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

This Court's decision in *Concord*, confirms this result. This Court sustained § 1202(b) allegations where the defendant allegedly used dataset-curation tools that removed CMI and thereby concealed its own unauthorized training use. 2025 WL 4808984, at *4–6. This Court stated: "[b]ecause [defendant] allegedly copied the datasets discussed above, to curate a dataset to train [its AI product], and removed the CMI therefrom, the Court can plausibly infer that [defendant] did so 'knowing that removing the CMI would help conceal the alleged infringement.'" *Id*. at *5 (quoting *Batra v. PopSugar, Inc.*, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019)). The same inference should follow here. Plaintiff alleges that NVIDIA used Objaverse-derived datasets to identify and obtain 3D works which were accompanied by attribution, source, license, and NoAI CMI; processed those works into CMI-stripped training representations; and then used those representations to train TRELLIS-based and related generative 3D AI systems. Compl. ¶¶ 54–64, 65–69, 81, 88–90, 94–107, 111–18, 149–57, 166–71. On those facts, the alleged CMI removal was part of the same dataset-curation and training process that enabled NVIDIA's unauthorized use (i.e., infringement).

Recent AI-training cases confirm this result. In *Kadrey*, the court held that plaintiffs plausibly alleged that Meta removed CMI to conceal infringement where Meta allegedly knew its model could memorize and output CMI unless CMI was removed and took steps to reduce that risk. *Kadrey*, 2025 WL 744032, at *2. In *Schneider*, the court held allegations that YouTube knew uploaded works routinely contained CMI, knew CMI was valuable to copyright owners, and knew that works with missing CMI could facilitate infringement supported a plausible inference of the required scienter. 2022 WL 3031212, at *2. And in *New York Times*, the court held that § 1202(b) is satisfied where CMI removal plausibly conceals the defendant's own alleged infringement. 777 F. Supp. 3d at 315–16. Plaintiff alleges the same kind of connection here: NVIDIA knew, or had reasonable grounds to know, that the works it obtained for AI training were accompanied by attribution, source-platform information, license terms, and NoAI CMI, yet processed them into AI training inputs that no longer preserved that information. Compl. ¶¶ 54–64, 65–69, 81, 88–90, 94–107, 149–57, 166–71.

14

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### 2.    NVIDIA's "Identicality" Rule Has No Basis in § 1202.

NVIDIA next advocates for an "identicality" requirement for Plaintiff's § 1202(b) claims. Mot. at 10-12. Specifically, NVIDIA argues that this requirement "follows from the text of § 1202" and that "both § 1202(b)(1) and § 1202(b)(3) impose an identicality requirement." Mot. at 11.  Not so. "Identicality" has no basis in the statutory text of § 1202(b) and NVIDIA's support for this argument is unsettled, heavily contested, and non-binding.

Section 1202(b)(1) prohibits a defendant from "intentionally remov[ing] or alter[ing] any copyright management information" without authority, while § 1202(b)(3) prohibits distribution of works or copies of works knowing that CMI has been removed or altered. *See* 17 U.S.C. § 1202(b)(1), (b)(3). Nothing in either subsection says "identical copy." Congress knew how to use the word "identical" when it wanted to as evidenced by its use elsewhere in the DMCA. *See* 17 U.S.C. § 1201(d)(2). Section 1202(c) defines CMI as information "conveyed in connection with copies . . . of a work," not information conveyed only with identical copies. 17 U.S.C. § 1202(c). Several courts have rejected a rigid identicality requirement, and the issue is sufficiently unsettled that *Doe 1* has been certified for interlocutory appeal. For example, in this District, Judge Illston sustained a § 1202(b) claim built on source code alleged to be "strikingly similar" to the original rather than identical, recognizing a "split in authority" on identicality. *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 3522196, at *9 (N.D. Cal. July 23, 2024). *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053 (N.D. Cal. 2023) (removal of CMI from works derivative of plaintiff's original works sufficient at the pleading stage); *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) (examining the statute's text and legislative history and finding no identicality requirement); *see also ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("the definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work").

NVIDIA's cases do not require dismissal. *Doe 1* addressed a different theory: whether modified Copilot outputs could support § 1202(b) liability where the operative accused works were alleged to be "near-identical," "modified," or "functional equivalents," rather than identical copies. 2024 WL 235217, at *8–9. That issue is now certified for interlocutory appeal because there is substantial ground for disagreement. *Doe 1 v. GitHub, Inc.*, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024); No. 24-7700

15

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

(9th Cir. argued Feb. 11, 2026). *O'Neal v. Sideshow, Inc.*, likewise involved altered images of sculptures published in a book, where the plaintiff did not plausibly allege removal from identical copies and separately failed to plead the required knowledge that CMI removal would likely result in future infringement583 F. Supp. 3d 1282, 1287-88 (C.D. Cal. 2022). And *Andersen* applied the identicality rule to a DMCA theory focused on non-identical AI outputs, while acknowledging that the issue remains unsettled. 744 F. Supp. 3d at 971. Plaintiff's theory is different. The Complaint alleges that NVIDIA obtained copies of Plaintiff's original 3D works with CMI, removed or severed that CMI during preprocessing, and used the resulting CMI-stripped copies or representations in its training datasets and systems. Compl. ¶¶ 65–69, 81, 88–90, 94–107, 118, 149–57, 166–71. That training-stage removal theory does not depend on proving that any downstream AI output is identical to Plaintiff's original files.

NVIDIA's "identicality" argument is especially inapplicable to Plaintiff's § 1202(b)(1) claim, which imposes liability for the *act of removing CMI* and does not require distribution of anything. To plead a § 1202(b)(1) claim, Plaintiff need only allege intentional removal or alteration of CMI without authority, together with the required scienter. *See Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022). The Complaint alleges these elements: NVIDIA obtained copies of Plaintiff's original works before stripping or separating the CMI. Compl. ¶¶ 96–101, 149–152, 166–169. The works existed on Sketchfab, Thingiverse, Polycam, and similar repositories with creator attribution, licensing terms, source information, and other CMI. *Id.* at ¶¶ 88, 94, 147–148, 164–165. NVIDIA processed the copies it obtained into training inputs in a manner that removed, altered, or failed to preserve the associated CMI. *Id.* at ¶¶ 89–90, 149–153, 166–169. That is a classic removal theory: a defendant obtains copies of the works with CMI and then uses an automated technical process that produces copies or representations without the CMI. The violation is established upon the removal.

NVIDIA's "identicality" argument regarding § 1202(b)(3) misconstrues Plaintiff's allegations and attempts to collapse that section into an output-identicality rule. Such a narrow reading is not appropriate here. Section 1202(b)(3) prohibits distributing "works" or "copies of works" knowing that CMI "has been removed or altered," and knowing or having reasonable grounds to know that doing so will facilitate, enable, or conceal infringement. 17 U.S.C. § 1202(b)(3). Unlike § 1202(b)(1), the gravamen is not the act of removal itself, it is distribution of works or copies after CMI has been removed. Thus, the relevant

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

question is whether NVIDIA allegedly possessed and used copies of Plaintiff's works from which CMI had been removed, with the requisite knowledge. Plaintiff plausibly alleges exactly that: NVIDIA obtained copies of his 3D works with CMI, stripped or separated the CMI through preprocessing, and then used those CMI-stripped copies or representations in its AI-training datasets and systems. Compl. ¶¶ 89–90, 94–107, 118, 149–57, 166–71. Those allegations plausibly plead that NVIDIA used and distributed CMI-stripped copies or representations in the course of commercializing TRELLIS-based datasets, systems, and developer-facing functionality.

### C. Plaintiff Adequately Pleads a § 1202(b)(3) Claim Based on NVIDIA's Distribution of Works Stripped of CMI.

Plaintiff also plausibly states a claim under § 1202(b)(3). Section 1202(b)(3) prohibits "distribut[ing] . . . works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright owner or the law," where the defendant knows, or has reasonable grounds to know, that the act "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(3). A plaintiff states a claim by alleging "(1) the existence of CMI in connection with a copyrighted work; (2) that a defendant 'distribute[d] … works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or … having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango*, 970 F.3d at 171 (quoting 17 U.S.C. § 1202(b)(3)).

#### 1. NVIDIA Allegedly Distributed and Commercialized CMI-Stripped Copies and Representations.

The Complaint plausibly alleges distribution. Count II is not pleaded on a source-file-transfer theory. It is pleaded on the theory that NVIDIA copied Plaintiff's works, stripped or severed the accompanying CMI during preprocessing, and then used, distributed, incorporated, and commercialized the resulting CMI-stripped copies or representations in the datasets, systems, and developer-facing platforms used to develop and deploy its commercial AI technology. Compl. ¶¶ 89, 99–102, 113–18, 149–53, 162–71. NVIDIA argues that the Complaint pleads "only internal use" and no "actual sharing" of Plaintiff's works. Mot. at 13. But the Complaint alleges more than passive possession: NVIDIA allegedly incorporated CMI-stripped copies or representations into its training datasets and systems and then

17

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

commercialized TRELLIS-based model and dataset functionality through platforms and services made available to third-party developers and enterprises. Compl. ¶¶ 107–18, 153, 168, 171. Those allegations are sufficient at the pleading stage; Plaintiff need not identify the precise technical form of each copy or each downstream transfer before discovery into NVIDIA's proprietary systems.

Neither case NVIDIA cites changes this conclusion. In *Free Speech Systems*, a photographer alleged that someone stripped copyright information from his photographs, but the complaint did not allege who stripped the CMI, what was stripped, or when it happened. Free Speech Sys., LLC v. Menzel, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019). The plaintiff "simply reiterate[d] the legal standard and allege[d] no facts in support." *Id.* Here, Plaintiff identifies the CMI that was removed, the pipeline through which NVIDIA allegedly removed or severed it, and NVIDIA's subsequent commercialization of the resulting TRELLIS-based systems. Compl. ¶¶ 65–69, 88–90, 94–107, 113–18, 149–53, 166–71. *The Intercept* is similarly distinguishable. There, the plaintiff asked the court to infer that OpenAI shared CMI-containing articles with Microsoft from the mere existence of a corporate partnership; the court refused because that relationship showed only that sharing was possible, not that it occurred. *The Intercept*, 767 F. Supp. 3d at 32–33. Plaintiff does not rely on that kind of unsupported inference. The Complaint alleges NVIDIA's own public disclosures and conduct: NVIDIA trained on Objaverse-derived materials, obtained works published with CMI, removed or severed that CMI during processing, and then used, incorporated, and commercialized CMI-stripped copies or representations through its TRELLIS-based AI systems. Compl. ¶¶ 13–14, 111–18, 149–53, 166–71.

### 2. NVIDIA's Alleged Removal Supports Knowledge That CMI Was Removed.

NVIDIA argues that the Complaint alleges no actual knowledge that CMI was removed without authority. Mot. at 13. NVIDIA's position misreads the Complaint. Plaintiff does not plead that NVIDIA simply drew its copies of the works directly from Microsoft's TRELLIS release. Indeed, the Complaint makes clear that Objaverse-XL and related derivative datasets function as pointers or source maps, preserving links or references to the original source files, repositories, platform pages, and creator accounts where the works were originally hosted. Compl. ¶¶ 8, 81–83, 87, 95–96, 140. Instead, Plaintiff alleges that NVIDIA used the Objaverse and TRELLIS datasets as source maps to obtain ***its own copies***

18

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

from the repositories where CMI accompanied the works as hosted and distributed, and then NVIDIA removed that CMI during processing for AI training. Compl. ¶¶ 89, 103, 118, 152, 167–169. It goes without saying that a party that does the actual removing of CMI has knowledge of its removal, and courts have rejected the same sort of "semantic distinction" NVIDIA asks the Court to apply here. *See Doe 1*, 672 F. Supp. 3d at 858. *Harrington* is different. There, the plaintiff alleged wholesale metadata stripping but did not plead facts showing Pinterest knew that the specific works contained metadata constituting CMI when uploaded, or that removal of that metadata would aid infringement. 2022 WL 4348460, at *4–8. Here, Plaintiff alleges that CMI accompanied the works as hosted and distributed on public repositories, that Objaverse-derived materials preserved source references to that CMI, and that NVIDIA used those materials to obtain the works and then severed the CMI during preprocessing. Compl. ¶¶ 65–69, 81, 88–90, 94–107, 147–52, 164–71.

### D.    Any Dismissal Should Be With Leave to Amend.

For the reasons above, NVIDIA's Motion should be denied. But even if the Court concludes that any claim is deficient or allegation should be clarified, dismissal with prejudice (as requested by NVIDIA (Mot. at 3)) would be improper. This is the first complaint, NVIDIA's arguments turn largely on pleading specificity, and any perceived defects could be cured by amendment. *See* Fed. R. Civ. P. 15(a)(2); s*ee also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted unless amendment would be futile); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiff therefore respectfully requests leave to amend if the Court dismisses any claim.

### CONCLUSION

For these reasons, Plaintiff plausibly states claims under §§ 1202(b)(1) and 1202(b)(3). Therefore, the Court should DENY NVIDIA's Motion.

19

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: July 6, 2026                          Respectfully Submitted,


                                            */s/ William J. Edelman*
                                            William J. Edelman (SBN 285177)
                                            **MILBERG, PLLC**
                                            280 South Beverly Drive, Penthouse
                                            Beverly Hills, CA 90212
                                            Tel: 866.252.0878
                                            wedelman@milberg.com

                                            Michael A. Acciavatti (admitted *pro hac vice*)
                                            **MILBERG, PLLC**
                                            405 East 50th Street
                                            New York, NY 10022
                                            Tel: 212.594.5300
                                            macciavatti@milberg.com

                                            *Attorneys for Plaintiff*

20

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I, William J. Edelman, hereby certify that on July 6, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action.

/s/ William J. Edelman
William J. Edelman