KEKER, VAN NEST & PETERS LLP
SHARIF E. JACOB - # 257546
sjacob@keker.com
KATIE LYNN JOYCE - # 308263
kjoyce@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant NVIDIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>NVIDIA CORPORATION,<br><br>   Defendant. | Case No. 5:26-CV-02647-EKL<br><br>**DEFENDANT NVIDIA CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:  September 2, 2026<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 7 – 4th Floor<br>Judge:  Hon. Eumi K. Lee<br><br>Date Filed: March 26, 2026<br><br>Trial Date:  Not Set |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................................1

II.    ARGUMENT ......................................................................................................................2

    A.    Beaulier's Opposition Confirms His Failure to Plausibly Allege CMI
    Removal under § 1202(b)(1)...................................................................................2

        1.    Beaulier May Not Plead Conclusory or Non-Cognizable Alternative
        Facts to Allege CMI Removal ...................................................................2

        2.    Beaulier's Cited Authorities Do Not Support § 1202(b)(1) Claims
        Based on a "Failure to Preserve" CMI or a "Disregard" of CMI ...............4

    B.    Beaulier Fails to Allege Any Intentional Removal of CMI under
    § 1202(b)(1) ...........................................................................................................5

    C.    Beaulier's Opposition Confirms That He Has Not Pled the Requisite
    Mental State under Both § 1202(b)(1) and § 1202(b)(3).......................................7

    D.    Beaulier Misreads the DMCA to Omit the Identicality Requirement under
    Both § 1202(b)(1) and § 1202(b)(3) ......................................................................9

    E.    Beaulier's Opposition Identifies No Distribution as Required under
    § 1202(b)(3) .........................................................................................................12

    F.    Beaulier's Complaint Fails to Plausibly Allege Knowledge of Removal
    Without Authority as Required under § 1202(b)(3) .............................................13

    G.    The Court Should Not Grant Leave to Amend......................................................13

III.    CONCLUSION.................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*ADR International Ltd. v. Institute for Supply Management, Inc.*,
667 F. Supp. 3d 411 (S.D. Tex. 2023) ....................................................................................11

*Airs Aromatic, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ..................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................1, 4

*Beijing Meishe Network Technology v. TikTok*,
No. 23-CV-06012-SI, 2024 WL 3522196 (N.D. Cal. July 23, 2024)...................................10

*Braun v. Yahoo*,
No. 17-CV-06294-SVK, 2018 WL 10809622 (N.D. Cal. Mar. 28, 2018) ...........................10

*Concord Music Group, Inc. v. Anthropic PBC*,
No. 24-CV-03811-EKL, 2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) ...............................6, 8

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ...........................................................................4, 6, 12

*Doe 1 v. GitHub, Inc.*,
No. 22-CV-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ....................................9

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
No. 2:22-CV-01463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25,
2022) .......................................................................................................................................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...........................................................................................1, 3, 4

*Elf-Man, LLC v. Cariveau*,
No. C13-0507RSL, 2014 WL 202096 (W.D. Wash. Jan. 17, 2014) ..................................3, 4

*Falkner v. Gen. Motors*,
393 F. Supp. 3d 927 (C.D. Cal. 2018) ...................................................................................3

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...............................................................................13

*FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*,
No. CV 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022)..............................12

*GC2 Inc. v. International Game Technology PLC*,
255 F. Supp. 3d 812 (N.D. Ill. 2017) .....................................................................................5

*Gibson v. City of Portland*,
  165 F.4th 1265 (9th Cir. 2026) ...................................................................................3

*Harrington v. Pinterest, Inc.*,
  No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)...............................8

*ICONICS, Inc. v. Massaro*,
  192 F. Supp. 3d 254 (D. Mass. 2016) ........................................................................11

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-CV-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025)................................6, 8, 9

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999) .........................................................................5

*Lawson v. Walt Disney Co.*,
  No. 8:25-CV-00889-JVS-ADS, 2025 WL 4687331 (C.D. Cal. Sept. 26, 2025)........................7

*Logan v. Meta Platforms, Inc.*,
  636 F. Supp. 3d 1052 (N.D. Cal. 2022) .....................................................................5, 6

*New York Times Co. v. Microsoft Corp.*,
  777 F. Supp. 3d 283 (S.D.N.Y. 2025)....................................................................6, 9, 12

*Philpot v. Alternet Media, Inc.*,
  No. 18-CV-04479-TSH, 2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) ................................8

*Rentmeester v. Nike, Inc.*,
  *No.* 3:15-CV-00113-MO, 2015 WL 3766546 (D. Or. June 15, 2015) ...................................7

*Schneider v. YouTube, LLC*,
  No. 20-CV-04423-JD, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022).....................................9

*Splunk Inc. v. Cribl, Inc.*,
  662 F. Supp. 3d 1029 (N.D. Cal. 2023) ......................................................................11

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ........................................................................2, 7, 8, 13

*The Intercept Media, Inc. v. OpenAI, Inc.*,
  767 F. Supp. 3d 18 (S.D.N.Y. 2025)........................................................................6, 12

*Tremblay v. OpenAI, Inc.*,
  716 F. Supp. 3d 772 (N.D. Cal. 2024) .....................................................................8, 10

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
  43 F.4th 1313 (11th Cir. 2022) ..................................................................................7

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) ...................................................................................1

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

**Federal Statutes**

17 U.S.C. § 1202 ................................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................................ 3, 4

Fed. R. Civ. P. 12 ...................................................................................................................... 1, 8

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

## I.    INTRODUCTION

Section 1202 of the Digital Millennium Copyright Act ("DMCA") is narrow, requiring specific actions and mental states. 17 U.S.C. § 1202(b). Unable to plead the required facts, Beaulier advances what he candidly admits is an entirely "novel legal theory." ECF No. 26 (Opp'n) at 5.[1] Beaulier's new legal theory is contrary to the plain text of the statute, and precluded by binding precedent.

Beaulier's legal theory fails at nearly every element of the claims. At the outset, the statute requires pleading sufficient "factual matter" to show that NVIDIA "remove[d] or alter[ed]" copyright management information. 17 U.S.C. § 1202(b)(1). Beaulier argues that he can merely parrot the words of the statute without any supporting facts, but binding case law precludes that argument. He also argues that he can plead in the "alternative," but his "alternative" allegations—that NVIDIA "failed to [] preserve[], or otherwise disregarded" CMI—are also conclusory and fail to state a claim under section 1202(b). The U.S. Supreme Court and the Ninth Circuit have rejected Beaulier's view that the Court should proceed to costly litigation on hypothetical, non-cognizable allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014).

For one of section 1202(b)'s mental-state requirements, Beaulier also has to double down on his "novel legal theory." He concedes that he cannot plead that NVIDIA stripped CMI from his works with the intent that its actions would "induce, enable, facilitate, or conceal an infringement" of copyright. 17 U.S.C. § 1202(b). Indeed, Beaulier contends that he has no duty to plead a "future act of infringement" and completely abandons any theory of liability based on output. He is thus left with a single, sweeping premise: that the routine data processing inherent in training any artificial intelligence model is actionable. Under this theory, liability attaches regardless of NVIDIA's intent to induce infringement and regardless of his failure to plead even a single act of infringement by NVIDIA arising from the removal of CMI. Beaulier cites no

---

[1] Beaulier also contends that Rule 12 dismissals are disfavored when a complaint presents a novel legal theory. Opp'n at 4. But novelty does not excuse failure to plead statutory elements, and discovery is not appropriate where the allegations fail as a matter of law. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("[P]leadings must assert well-pleaded factual allegations to advance to discovery.").

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

caselaw that supports this radical proposition, and binding Ninth Circuit precedent forecloses it. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).

Beaulier's next move is to contest the elements of the DMCA itself. The plain language of the statute requires him to show that NVIDIA removed or altered CMI "conveyed in connection with *copies* . . . of a work," 17 U.S.C. § 1202(c) (emphasis added), yet Beaulier insists he is exempt from this burden. To the contrary, because his Complaint fails to identify a single, identical copy of his work that NVIDIA made after stripping CMI, he fails to state a claim.

Finally, Beaulier's abandonment of any claim that NVIDIA's AI models output copies of his works dooms his distribution claims. Beaulier does not and cannot plead that NVIDIA's models output CMI-stripped copies of his works. In fact, he pleads just the opposite: that NVIDIA's models radically transform the material on which they were trained into something entirely new. Compl. ¶¶ 97–100 ("Defendant processed the models through machine-learning preprocessing pipelines designed to convert raw 3D assets into training inputs suitable for generative AI systems. . . . This preprocessing typically includes operations such as format conversion, mesh normalization, rendering, voxelization, and other transformations designed to convert the geometry and textures of a 3D model into data structures suitable for machine-learning training."). Therefore, he cannot prove that NVIDIA "distribut[ed] . . . copies of [his] works," knowing that CMI has been removed. 17 U.S.C. § 1202(b)(3).

The Complaint is thus deficient in every respect identified in NVIDIA's opening brief. Because those defects arise from fundamental conflicts between his legal theories and the statutory requirements of § 1202, the Court should dismiss the Complaint with prejudice.

## II. ARGUMENT

### A. Beaulier's Opposition Confirms His Failure to Plausibly Allege CMI Removal under § 1202(b)(1)

#### 1. Beaulier May Not Plead Conclusory or Non-Cognizable Alternative Facts to Allege CMI Removal

Section 1202(b)(1) requires Beaulier to allege that NVIDIA "remove[d] or alter[ed]" CMI. 17 U.S.C. § 1202(b)(1). Beaulier's opposition confirms that he has not pled any facts demonstrating that NVIDIA "altered" CMI or that Microsoft's omission of licensing information

2

6251569

in releasing a dataset means that NVIDIA has removed any CMI. Opp'n at 9. Beaulier is thus left with his conclusory allegations that NVIDIA purportedly "removed, failed to . . . preserve[], **or** otherwise disregarded" the CMI of his works during the process of training NVIDIA's AI models. Compl. ¶¶ 89, 103, 118 (emphasis added).

The plain terms of § 1202(b)(1) do not cover any alleged "failure to preserve" CMI or "disregard" of CMI, which Beaulier does not dispute. Opp'n at 5; *Falkner v. Gen. Motors*, 393 F. Supp. 3d 927, 938–39 (C.D. Cal. 2018) (a failure to preserve CMI does not amount to removal or alteration of CMI under § 1202(b)(1)). Nor does Beaulier dispute that binding precedent prohibits a plaintiff from asserting allegations that "are consistent with both [his] theory of liability and [an] innocent alternative. . . ." Mot. at 7 (quoting *Eclectic Props.*, 751 F.3d at 998–99). Because Beaulier's allegations against NVIDIA are "consistent" with an "innocent alternative," he fails to plausibly allege a § 1202(b)(1) claim.

To avoid this straightforward result, Beaulier cites certain allegations he contends show "affirmative stripping." Opp'n at 5. But the cited allegations typify Beaulier's impermissible approach, reiterating conclusory allegations that fail to state a claim. For example, paragraphs 63 to 64 accuse NVIDIA of "remov[ing], fail[ing] to preserve, **or** disregard[ing]" alleged CMI. Compl. ¶¶ 63–64 (emphasis added). Likewise, paragraph 89 alleges that NVIDIA "obtain[ed]" certain works and that the "CMI that accompanied the works . . . were removed, failed to be preserved, **or** otherwise disregarded." *Id.* ¶ 89 (emphasis added). And paragraph 167 asserts that "the CMI associated with the works was removed, altered, **or** failed to be preserved" during the process of training. *Id.* ¶ 167 (emphasis added). These allegations only confirm that Beaulier impermissibly accuses innocent conduct of giving rise to liability under § 1202(b)(1). *Eclectic*, 751 F.3d at 998–99.

Rule 8(d)(2) requires Beaulier to state a plausible claim for relief. Opp'n at 8–9; *Gibson v. City of Portland*, 165 F.4th 1265, 1291–92 (9th Cir. 2026). Rule 8(d)(2) permits a plaintiff to allege alternative causes of action, but it does not allow him to allege alternative facts to support a cause of action, as Beaulier contends. Opp'n at 8–9. *Elf-Man, LLC v. Cariveau*, No. C13-0507RSL, 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) confirms that Beaulier may not

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

use Rule 8(d)(2) to avoid alleging a plausible claim. There, the plaintiff sued for copyright infringement and relied on two possible factual predicates, only one of which could give rise to liability. *Id.* Despite the plaintiff's reliance on Rule 8(d)(2), the *Elf-Man* court ruled that the "critical defect" was the complaint's "alternative pleading of the facts that are supposed to support [plaintiff's] claims." *Id*. The *Elf-Man* court thus dismissed the plaintiff's claim based on its use of the "or" conjunction to allege alternative facts in support of its claims. *Id*. Here, Beaulier has asserted one cause of action for CMI removal based on three alternative allegations, which is precisely the type of pleading approach that *Eclectic* and *Elf-Man* rejected.

Beaulier's allegations on removal are also impermissibly conclusory. *Iqbal*, 556 U.S. at 678. His opposition points to conclusory paragraphs that fail to set forth any specific facts supporting his allegation of CMI removal. Compl. ¶¶ 150–51; *Eclectic Props.*, 751 F.3d at 999 ("[T]he complaint alleges no specific facts supporting its conclusion that the properties' 'true fair market valu[e]' was just $11.1 million. The complaint does not cite any documents or sources for this value, nor does it explain the methodology by which this value was derived.").

In sum, Beaulier has not alleged a plausible ground for relief under § 1202(b)(1).

### 2. Beaulier's Cited Authorities Do Not Support § 1202(b)(1) Claims Based on a "Failure to Preserve" CMI or a "Disregard" of CMI

Beaulier's reliance on *Doe 1 v. GitHub* does not permit him to state a § 1202(b)(1) claim that turns on an alleged "failure-to-preserve" or "disregard" theory. 672 F. Supp. 3d 837, 857–59 (N.D. Cal. 2023). In *Doe 1*, the trial court did not hold that the "passive non-inclusion of CMI" could support a § 1202(b)(1) claim. Instead, it found unpersuasive the *defendant's description* of the plaintiff's allegations as "passive non-inclusion of CMI." *Id.* at 857–58. The *Doe 1* plaintiff identified public statements by the defendant indicating that an older version of the defendant's model output CMI, and that the defendant subsequently altered the configuration of its model to render it incapable of regurgitating such CMI. *Id.* By contrast, Beaulier—not NVIDIA—has repeatedly characterized his CMI removal claim as one based on a failure to preserve or a disregard of CMI. Compl. ¶¶ 1, 16, 63, 89, 103.

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

Nor does *GC2 Inc. v. International Game Technology PLC* compel a different result. 255 F. Supp. 3d 812 (N.D. Ill. 2017); Opp'n at 6. The *GC2* court held that the "intentional[] omi[ssion]" of CMI may underlie a § 1202(b)(1) claim. *GC2*, 255 F. Supp. 3d at 822. The *GC2* case rested its conclusion on "limited case law on this matter," *id.*, but it failed to address authorities, including district court decisions from the Ninth Circuit, holding that a simple omission of CMI does not provide the basis for a § 1202(b)(1) claim. As one district court has explained, the DMCA "does not prohibit merely omitting CMI. . . ." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 2:22-CV-01463-RGK-MAA, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022).

**B.    Beaulier Fails to Allege Any Intentional Removal of CMI under § 1202(b)(1)**

Beaulier also fails to allege intentional removal, as required under § 1202(b)(1). The Complaint alleges that any removal of CMI is an "inherent consequence" of NVIDIA's purported training pipeline. Mot. at 8 (quoting Compl. ¶ 105). The Complaint also alleges that the training workflow "is applied to all 3D assets, with no differentiation based on whether CMI is present." *Id.* (citing Compl. ¶ 97). These allegations foreclose any plausible inference that NVIDIA intentionally removed any CMI. As the court in *Logan v. Meta Platforms, Inc.* held, allegations describing the loss of CMI as the byproduct of a uniform technical process do not plausibly allege intentional removal. 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022). "[A]utomatically omitting CMI" as a consequence of a process, such as Meta's embedding of photos from third-party websites without a link to the original webpage on which the CMI appeared, "cannot itself plead intentionality. . . ." *Id.*; *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part and rev'd in part on other grounds*, 280 F.3d 934 (9th Cir. 2002) (holding that CMI loss resulting from the conversion of photos into thumbnails was "merely an unintended side effect," not intentional removal).

Beaulier's attempt to distinguish *Logan* fails. He claims that, in contrast to *Logan*'s uniform technical process of photo embedding, NVIDIA's training process causes "the omission of CMI" and reflects "an avoidable design choice." Opp'n at 11. That argument directly conflicts with his own allegation that the removal of CMI is an "***inherent*** consequence" of NVIDIA's training process. Compl. ¶ 105 (emphasis added). Beaulier may not oppose dismissal by "directly

contradic[ting] an earlier assertion made in" his Complaint. *Airs Aromatic, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). As in *Logan*, the alleged loss of CMI is attributable to the nature of the technical process—not to a process directed at removing CMI itself. 636 F. Supp. 3d at 1064.

Beaulier's cited authorities illustrate why his allegations fall short. Opp'n at 9–10. The common feature of those decisions is not simply that defendants intentionally processed works containing CMI. Rather, each involved allegations that the defendant knew its large language models (LLMs) would reproduce CMI as outputs or knowingly designed, selected, or configured a process directed at removing CMI itself. For example, in *Doe 1*, the complaint alleged that GitHub knew its models were outputting CMI and thus "trained [its] programs to ignore or remove CMI. . . ." 672 F. Supp. 3d at 857–58. Likewise, in *Concord Music Group, Inc. v. Anthropic PBC*, No. 24-CV-03811-EKL, 2025 WL 4808984, at *4 (N.D. Cal. Oct. 6, 2025), the plaintiffs alleged not only that Anthropic knew its model would reproduce CMI unless it affirmatively removed CMI from its training data, but that Anthropic specifically selected a tool to remove CMI for that purpose. *Id.* The remaining decisions on which Beaulier relies similarly involved allegations that defendants knew CMI would appear in model outputs and took affirmative steps—or employed tools specifically designed to remove CMI—to prevent that result. *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025) (alleging Meta knew its LLM was prone to memorizing and outputting CMI and affirmatively took steps to prevent those outputs from revealing the use of copyrighted data); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–15 (S.D.N.Y. 2025) (alleging defendants intentionally used Dragnet and Newspaper content extractors designed to strip copyright notices and other textual CMI during the process of training their LLMs); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–30 (S.D.N.Y. 2025) (same).

Beaulier alleges nothing comparable. Unlike the plaintiffs in the LLM cases on which he relies, Beaulier never alleges that NVIDIA knew its 3D models would reproduce CMI as outputs. Nor does Beaulier allege that NVIDIA's objective was to remove CMI or that it took affirmative steps to do so. He therefore fails to plausibly plead that any CMI removal was done intentionally.

6

### C.    Beaulier's Opposition Confirms That He Has Not Pled the Requisite Mental State under Both § 1202(b)(1) and § 1202(b)(3)

Beaulier's Complaint fails to adequately allege the requisite "mental state of knowing, or having a reasonable basis to know, that [NVIDIA's alleged] actions will induce, enable, facilitate, or conceal infringement." *Stevens*, 899 F.3d at 673; Mot. at 9. The Complaint does not (1) identify a predicate act of future infringement resulting from the purported CMI removal or (2) offer facts plausibly suggesting any knowledge that the CMI removal would contribute to this predicate infringement. Mot. at 9–10. In fact, Beaulier concedes that he did not and cannot allege a "future act of infringement by some future bad actor. . . ." Opp'n at 13. Instead, Beaulier asks the Court to adopt his "novel legal theory" that NVIDIA is trying to hide its own alleged infringement from itself. Beaulier's theory is both implausible and inconsistent with the Ninth Circuit's guidance on the double-scienter requirement. *Stevens*, 899 F.3d at 673.

Beaulier's core response is that NVIDIA allegedly attempted to conceal its "own infringement" by removing CMI. Opp'n at 13. Beaulier's secret, internal infringement theory fails at the threshold because he has failed to allege any "substantial similarity" between his 3D models and the representations he claims that NVIDIA created. *Rentmeester v. Nike, Inc.*, *No. 3:15-CV-00113-MO*, 2015 WL 3766546, at *7 (D. Or. June 15, 2015), *aff'd*, 883 F.3d 1111 (9th Cir. 2018). According to Beaulier himself, NVIDIA's alleged conduct radically *transforms* the asserted works; the training pipeline purportedly entails "format conversion, mesh normalization, rendering, voxelization, and *other transformations* designed to convert the geometry and textures of a 3D model into data structures suitable for machine-learning training." Compl. ¶ 100 (emphasis added). In short, the training process alleged in the Complaint definitively rules out any "underlying act of [copyright] infringement." *Rentmeester*, 2015 WL 3766546, at *7; *Lawson v. Walt Disney Co.*, No. 8:25-CV-00889-JVS-ADS, 2025 WL 4687331, at *8 (C.D. Cal. Sept. 26, 2025) ("Lawson does not cite authority that a plaintiff can bring a DMCA claim without successfully alleging a copyright infringement claim, and the Court is aware of none.").

Even if Beaulier alleged infringement, he does not assert any "identifiable connection" between the purported CMI removal and the infringement. *Victor Elias Photography, LLC v. Ice*

6251569

*Portal, Inc.*, 43 F.4th 1313, 1325 (11th Cir. 2022); *Stevens*, 899 F.3d at 673 ("[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur *as a result* of the removal or alteration of CMI." (emphasis added)). In short, Beaulier does not explain how the alleged CMI removal would "conceal infringement." 17 U.S.C. § 1202(b)(1). His opposition, for example, asserts that his 3D works had a "NoAI Tag" but that NVIDIA "used those works in commercial AI-training systems. . . ." Opp'n at 13. Merely alleging that NVIDIA used a work to train a model despite a "NoAI Tag" does not plausibly allege any type of concealment, let alone one arising from the purported removal of CMI. Taken literally, Beaulier's theory is nonsense because it amounts to concluding that NVIDIA removed the No AI Tag to hide its own alleged copyright infringement from itself. Beaulier's theory requires the court to conflate the requirement of CMI removal with the mental-state requirement. As NVIDIA explained in its Motion, the Ninth Circuit has rejected "this generic approach" because it "simply identifies a general possibility that exists whenever CMI is removed." *Stevens*, 899 F.3d at 673.

Beaulier's contention that *Stevens* does not apply at the Rule 12 stage is meritless. Opp'n at 12. While *Stevens* affirmed a grant of summary judgment, it nonetheless held that a plaintiff must provide "specific allegations as to how identifiable infringement 'will' be affected" by any CMI removal or alteration. 899 F.3d at 673. Beaulier all but concedes that he has not identified these "specific allegations." Opp'n at 12. Moreover, district courts within the Ninth Circuit have applied *Stevens* at the Rule 12 stage to dismiss § 1202(b)(1) claims. *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) ("Plaintiffs have not shown how omitting CMI in the copies used in the training set gave Defendants reasonable grounds to know that ChatGPT's output would induce, enable, facilitate, or conceal infringement."); *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *5–8 (N.D. Cal. Sept. 19, 2022); *Philpot v. Alternet Media, Inc.*, No. 18-CV-04479-TSH, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018).

Lastly, Beaulier's cited authorities do not allow him to evade § 1202(b)(1)'s mental-state requirement. *Concord*, *Kadrey*, and *New York Times* are all distinguishable because the plaintiffs alleged particular facts suggesting knowledge of potential infringement. *Concord*, 2025 WL

6251569

4808984, at *4 (plaintiff identified, among other things, research papers authored by defendant's co-founders acknowledging that models could regurgitate their inputs); *Kadrey*, 2025 WL 744032, at *2 (plaintiff alleged, among other things, that defendant "knew that Llama was especially prone to memorizing and generating outputs of CMI unless CMI was removed from its training data") (citation omitted); *New York Times*, 777 F. Supp. 3d at 316 (plaintiff identified, among other things, defendant's "policy of agreeing to indemnify end users accused of infringement" and "admission[s] that its products regurgitate material in response to user prompts"). Beaulier alleges nothing of the sort in the Complaint.[2]

Because Beaulier's opposition fails to identify any underlying infringement or to establish any connection between any alleged CMI removal and an act of infringement, he fails to state a claim under § 1202(b)(1) and § 1202(b)(3).

**D.    Beaulier Misreads the DMCA to Omit the Identicality Requirement under Both § 1202(b)(1) and § 1202(b)(3)**

Beaulier's claims under § 1202(b)(1) and § 1202(b)(3) require a plausible allegation that the CMI-removed works that NVIDIA purportedly used in training are identical to the asserted works. Mot. at 10–11. Beaulier's argument to the contrary cannot be reconciled with the DMCA's text.

Beaulier contends that the identicality requirement does not apply to his claims because § 1202(b) omits the phrase "identical copy." Opp'n at 15. But he cites no caselaw supporting this rigid reading of the statute.[3] Worse, his reading ignores the structure of the DMCA. Under § 1202(c), CMI must be "conveyed in connection with *copies* . . . of a work," *i.e.*, the statute protects CMI attached to a specific work or a copy thereof. In turn, § 1202(b) prohibits removing CMI from that *same* work or copy. Omitting the identicality requirement would therefore fracture

---

[2] Beaulier's reliance on *Schneider v. YouTube, LLC,* No. 20-CV-04423-JD, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) is misplaced. He identifies it as an "AI-training case[]," Opp'n at 14, but *Schneider* addressed whether YouTube's video upload process, which was used by third parties to post infringing content, removed CMI. *Schneider*, 2022 WL 3031212, at * 2.

[3] Beaulier notes that *Doe 1 v. GitHub, Inc.*, No. 22-CV-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) is pending on appeal, Opp'n at 15. But Beaulier does not address *Doe 1*'s reasoning, which remains persuasive authority.

6251569

the relationship between § 1202(c) and § 1202(b). In other words, removing CMI from a different work created later is *not* the same as removing CMI from the original work or a copy thereof. Only the latter, which Beaulier does not allege, is proscribed by § 1202(b)(1).

The text of § 1202(b)(3) likewise confirms the identicality requirement, as it prohibits the distribution of "works" or "copies of works." It does not reach the distribution of transformed representations, machine-learning inputs, or even derivative works, as Beaulier appears to allege. *Tremblay* recognized exactly this distinction. The *Tremblay* court rejected the plaintiffs' argument that OpenAI violated § 1202(b)(3) by generating and distributing derivative outputs that omitted CMI. *Tremblay*, 716 F. Supp. 3d at 779. The court explained that "[u]nder the plain language of the statute, liability requires distributing the *original* 'works' or 'copies of [the] works.'" *Id.* at 780 (emphasis added). Thus, the DMCA "does not prohibit merely omitting CMI from an infringing work." *Id.* at 779. Because the plaintiffs failed to allege what the outputs at issue were and whether those outputs were the original works without CMI, they failed to state a § 1202(b)(3) claim. *Id.* at 780.

The same reasoning applies here. Beaulier does not allege that NVIDIA distributed his original works or copies of them without CMI. Instead, he alleges that they underwent significant transformation. Mot. at 11. Nowhere does he allege any reproduction or distribution of his original works. Indeed, like the plaintiffs in *Tremblay*, he never alleges what NVIDIA's outputs look like at all, much less that NVIDIA reproduces his works without CMI. This omission is fatal to his claim.

Apparently recognizing that defect, Beaulier claims in his opposition that NVIDIA allegedly used "CMI-stripped copies" of his works. Opp'n at 17. The Complaint never makes this allegation, and Beaulier cannot use his opposition now to allege identicality. *Braun v. Yahoo*, No. 17-CV-06294-SVK, 2018 WL 10809622, at *3 (N.D. Cal. Mar. 28, 2018) ("Arguments in an opposition brief cannot supply the information missing from the Complaint.").

Moreover, none of Beaulier's cited authorities address whether § 1202 reaches works that have been transformed into fundamentally different works. In *Beijing Meishe Network Technology v. TikTok*, No. 23-CV-06012-SI, 2024 WL 3522196, at *9 (N.D. Cal. July 23, 2024),

10

the plaintiffs alleged that the defendants copied "identical, verbatim" portions of the plaintiffs' source code, removed the CMI, and then distributed the resulting software. Those allegations lack the critical assertion present here: the purported transformation of Beaulier's works into new machine-learning representations. Such allegations of transformation were likewise absent from *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023) and *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016), both of which similarly involved only allegations of defendants copying source code verbatim and removing the accompanying CMI, not transformation. *Splunk*, 662 F. Supp. 3d at 1053–55 (CMI removed from copied source code); *ICONICS*, 192 F. Supp. 3d at 272–73 (addressing whether CMI may accompany individual source code files, without addressing whether § 1202 reaches transformed works). Because both cases involved alleged removal of CMI from source code that was copied verbatim – not transformation of the original works – neither court had occasion to address the identicality issue presented here.

Nor does *ADR International Ltd. v. Institute for Supply Management, Inc.*, 667 F. Supp. 3d 411 (S.D. Tex. 2023) compel a different result. Although the court declined to require "identical copies" under the facts before it, it expressly recognized that § 1202 contemplates CMI being "once present on the work and later removed," such that CMI "cannot be 'removed' from a new work that never included CMI to begin with." *ADR*, 667 F. Supp. 3d at 428. The court found the plaintiff's allegations sufficient because the complaint alleged that the defendants reproduced the plaintiff's works, stripped those works of their CMI, and replaced that CMI with defendants' own. *Id.* Beaulier alleges no comparable facts. Instead, his allegations describe the creation of different machine-learning representations that never carried the CMI conveyed with the original works to begin with.

In sum, the identicality requirement bars Beaulier's § 1202(b)(1) and § 1202(b)(3) claims, because his Complaint fails to allege that the CMI-stripped copies are identical to his asserted works. Both claims therefore fail.

6251569

### E.    Beaulier's Opposition Identifies No Distribution as Required under § 1202(b)(3)

Beaulier's opposition confirms that he has not pled the distribution required by § 1202(b)(3). Rather than identify any distribution of his works or copies of those works, he instead relies on allegations concerning NVIDIA's *internal* use and commercialization of "CMI-stripped copies or representations. . . ." Opp'n at 17–18. Beaulier's argument fails for two reasons.

*First*, the alleged internal use of "CMI-stripped representations" does not establish distribution or sharing. Mot. at 12. Courts have understood "distribution" under § 1202(b)(3) to require a "sale or transfer of ownership extending beyond that of a mere public display[.]" *New York Times*, 777 F. Supp. 3d at 318; *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022) (finding that the display of works without CMI did not constitute "distribution"). Beaulier fails to cite a single case endorsing his novel theory: that internal use of a work constitutes "distribution" under § 1202(b)(3). Thus, Beaulier has not alleged "distribution" of any CMI-stripped works.

*Second*, Beaulier's allegations of commercialization do not state a claim. The Complaint alleges that CMI-stripped representations were used to train systems that were integrated into commercial products, platforms, and technologies, Compl. ¶ 107; that NVIDIA "operationalized" the TRELLIS-500K dataset as part of its commercial platforms and services, *id.* ¶ 113; and that NVIDIA incorporated the "TRELLIS model" into "AI Blueprints" marketed to users. *Id.* ¶ 115. But nowhere does Beaulier allege facts showing that the products, platforms, and services *distributed his works*, without CMI, to any third parties. Just as merely alleging a commercial relationship was insufficient to infer distribution in *Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 32 (S.D.N.Y. 2025), mere allegations of commercialization without any "transfer" are insufficient here. Indeed, Beaulier does not even allege that those commercial products and services can reproduce his works without CMI, as was the case in *Doe 1*. 672 F. Supp. 3d at 858.

Beaulier's statement that he need not identify "each downstream transfer" only highlights his pleading defect: the Complaint identifies no downstream transfer of his works *at all*. Opp'n at

18. By failing to allege facts in support of how NVIDIA distributed any of his CMI-stripped works, Beaulier fails to state a § 1202(b)(3) claim. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing § 1202(b)(3) claim where plaintiff alleged no facts identifying how defendant distributed any CMI-stripped works).

### F.    Beaulier's Complaint Fails to Plausibly Allege Knowledge of Removal Without Authority as Required under § 1202(b)(3)

Section 1202(b)(3) also requires a plausible allegation that the defendant distributed copyrighted material with actual knowledge that CMI was removed without authority. Mot. at 13. The Complaint fails to allege any facts that NVIDIA knew that any particular work of Beaulier's had CMI, knew that such CMI had been removed or altered, or knew that any such removal or alteration was unauthorized. Mot. at 13.

Beaulier's only response is that, because NVIDIA allegedly removed CMI from his works, it knew that CMI was removed without authority. Beaulier's argument fails for the reasons stated above: the Complaint does not plausibly allege that NVIDIA removed CMI in the first place. Section II.A, *supra*. Thus, Beaulier's § 1202(b)(3) claim fails for the additional reason that he does not allege that NVIDIA distributed any works with actual knowledge that CMI was removed without authority.

### G.    The Court Should Not Grant Leave to Amend

Leave to amend would be futile. Beaulier's claims are not deficient only because of isolated pleading errors. Rather, as demonstrated above, the Complaint suffers from numerous legal defects, each of which justifies dismissal of his § 1202(b)(1) or § 1202(b)(3) claims: a failure to allege removal; a failure to allege the double-scienter requirement in view of binding precedent in *Stevens*, 899 F.3d at 673–76; a failure to allege a predicate act of infringement; a failure to allege distribution and to identify any case law supporting his theory of distribution; and a failure to satisfy the identicality requirement. Those defects underscore that Beaulier's "novel legal theory" stretches § 1202 far beyond the conduct it was designed to address. Opp'n at 4. That overreach cannot be cured by amendment.

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569

III.    CONCLUSION

NVIDIA respectfully requests that the Court dismiss the entire Complaint with prejudice.

Dated:  July 13, 2026                                                KEKER, VAN NEST & PETERS LLP

By:    */s/ Victor Chiu*
SHARIF E. JACOB
KATIE LYNN JOYCE
VICTOR CHIU

Attorneys for Defendant NVIDIA
CORPORATION

NVIDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:26-CV-02647-EKL

6251569